No. 19,694.

ALBERT DEAN RUMLEY v.
PEOPLE OF THE STATE OF COLORADO.
(368 P. [2d] 197)

Decided January 22, 1962.

Mr. KENNETH H. GROSS, Mr. RONALD H. STRAHLE, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

IN an information filed against Rumley, to whom we refer as defendant, it is alleged that he "did unlawfully kill and slay one Mickey Francis."

Defendant was tried before a jury on this charge and found guilty of involuntary manslaughter. Motion "to dismiss and for a new trial" was filed, argued and denied, and the defendant was sentenced to serve sixty days in the county jail and to pay all costs.

The defendant is here by writ of error seeking reversal and dismissal of the charges filed against him. He relies upon fifteen assignments of error which may well be grouped under three general headings as follows:

1. Insufficiency of the evidence to sustain the verdict and judgment.

2. The giving of erroneous instructions.

3. Refusal to give tendered instructions.

In addition to the foregoing, defendant's counsel, in this court and for the first time, urge a new and additional ground for reversal; namely, the failure of the prosecution to establish the venue of the alleged offense.

The People called four witnesses to prove its case. The first, a patrolman, who was the only witness who observed any of the actions of the defendant prior to and at the time of the wreck of the automobile driven by the defendant; second, a patrolman who was called in after the wreck, made some observations at the scene of the wreck, took some pictures, and assisted in taking some measurements; a third patrolman, an expert on "reaction time," "speed as related to skid marks," "co-efficient of friction or a drag figure," "gravity," and

other related phenomena, who made certain tests some three months after the wreck; the fourth, a mortician and deputy coroner who gave testimony as to the cause of death, which testimony was stricken.

From the sketchy, vague, uncertain, and, in many respects, contradictory evidence contained in the record before us, it appears that the defendant, accompanied by a passenger, at about 1:00 o'clock a. m., on February 4, 1960, was driving a 1957 Chevrolet automobile in a northerly direction on Lincoln Avenue, in the city of Loveland; as he crossed Eleventh Avenue he met a patrolman going south on Lincoln. To the patrolman, defendant's car "seemed to be going at great speed," and he turned and followed it north on Lincoln Avenue, which extends north as U. S. Highway 287, and at a point a short distance north of Loveland makes a 90 degree turn to the east, at which point a county road, No. 34, running north, meets No. 287. The defendant failed to negotiate the curve, and went straight ahead, lost control of the car which rolled over several times and came to rest some distance north of the curve where the county road intersects No. 287. The pursuing patrolman, traveling at a speed of "approximately fifty miles an hour," was almost immediately at the scene of the wreck. This patrolman observed the defendant badly injured, lying by the side of the wrecked car. Some thirty to forty minutes later a body was found floating in an irrigation ditch 110 feet from the wrecked car.

The second patrolman testified that there were some skid marks on Highway 287 at a point 244 feet south of the curve.

The third patrolman, appearing and offering testimony as an expert, expressed his opinion to the effect that an automobile that skids 244 feet "on the county road just north of Loveland" and then stops had a speed of 68.7 miles per hour at the point where the skid commenced. This speed in the language of the witness is arrived at by application of the following formula, a short rule of

thumb, from which it is doubtful that either Einstein or Oppenheimer could have constructed an equation:

"A. If after running these tests and averaging them all up, the speed I used was 30, the speed squared would be 900, and I will just take at random, I think one of the tests was 40.4, multiplied by 30 times 40.4 into 900 which would come out about 70, it would be .070. This is the point of friction, this is the amount of drag factor. If this figure would come out to 1000, then it would be — Whenever you hit the brake it stops, you stop immediately, that would be proof of the coefficient of friction, this .070 or 16.1, whatever it might be, and this equal .54 from this. Then the other formula, and the speed which we now want to know what the minimum speed the vehicle in question had to be going, it would skid 244 feet and stop at the end of the skid without any other force to hold it back in any way. That formula will equal now what we want to know, the speed of the vehicle, 5.5 is the constant in this problem is the square root of the 30, which is the other coefficient of friction which you will learn, and also the drag, this multiplied times the square root, in this case 244 times 46.4, this, then, of course, multiplied 46.4 times 244, whatever that was, 156.76. If you take the square root of that it would come out instead about 42.6 or .5, I believe .5 would probably be closer. Then you would multiply 5.5 times the square root of 244x64, you have the speed the vehicle would have to be traveling.

"Q. What do you indicate the minimum speed was for the defendant, if you can tell when he would stop*ped.*

\* \* \*

"A. My figure is 68.7 miles per hour."

▇ Certainly one cannot charge that this end result can be attributed to over-simplification of the problem presented for solution. However, it can well be questioned on three other grounds: (1) there is no evidence that this car skidded 244 feet; (2) there is no evidence that the car ever traveled, much less skidded, on a county

road;   (3)  the evidence shows conclusively that the car did not come to rest at the end of a skid.

There is no evidence in this record of any improper driving by this defendant except that touching on speed.

Instructions Nos. 5 and 6, given to the jury over the objections of the defendant, are as follows:

"INSTRUCTION NO. 5

"A motor vehicle act of the State of Colorado provides in part as follows:

" 'Any person who drives any motor vehicle in such a manner as to indicate either a wanton or wilful disregard for the safety of persons or property is guilty of reckless driving.

" 'Any person who drives any motor vehicle in a careless and imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving.

" 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

" 'Where no special hazard exists the following speeds shall be lawful but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful:

(a)   Twenty-five miles per hour in any business district;

(b)   Thirty miles per hour in any residence district;

(c)   Forty miles per hour on open mountain highways; twenty miles per hour on narrow, winding mountain highways and blind curves; sixty miles per hour under other conditions.

" 'The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway,

or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.'

"The violation of any one or more of the above provisions by any person constitutes an unlawful act."

"INSTRUCTION NO. 6

"In this case, if you find from the evidence beyond a reasonable doubt that immediately prior to and at the time of the wrecking of the automobile driven by, the Defendant, either intentionally or through criminal negligence, was violating any one or more of the provisions of the Motor Vehicle Act as set forth in Instruction No. 5, and that the injury to and subsequent death of said Mickey Francis was proximately caused by such violation by the Defendant of any one or more of such provisions of the act, then in such case the Defendant would be guilty of involuntary manslaughter in the commission of an unlawful act.

"If you do not find the Defendant was committing any violation of the Motor Vehicle Act, yet if you find from the evidence beyond a reasonable doubt that the Defendant in the operation and driving of his automobile at the time and place of the wreck was operating and driving said automobile in a criminally negligent manner and that such negligent operation or driving was the proximate cause of the injury and subsequent death of Mickey Francis, then in such case the Defendant would be guilty of involuntary manslaughter in the commission of a lawful act which probably might produce death of a human being in an unlawful manner.

"On the other hand, if you do not find from the evidence in this case beyond a reasonable doubt, that the Defendant then and there, intentionally or through criminal negligence was operating and driving his auto-

mobile in violation of one or more of said provisions, or in a criminally negligent manner, or if you do not find beyond a reasonable doubt from the evidence in this case that any such operation and driving was a proximate cause of the death of Mickey Francis, then and in either event you will find the defendant not guilty of manslaughter."

■ Though these instructions may correctly state the provisions of the Motor Vehicle Act, as well as abstract principles of law, they for the most part are wholly irrelevant and have no application to the facts of this case. There is no evidence in this record with reference to (1) reckless driving; (2) careless driving; (3) driving in (a) a business district, (b) a residence district, (c) an open mountain highway, (d) narrow winding mountain highways, or blind curves.

C.R.S. '53, 39-7-19, provides that: "The district court, in all cases, both civil and criminal, shall only instruct the petit jury as to the law of the case. * * *"

The general rule is stated in 23A C.J.S. 762, §1312: "The instructions to the jury should relate and be confined to issues concerning which evidence has been presented. Accordingly, the question of the sufficiency of instructions must be determined always by the facts of each case; the instructions should be applicable to the facts, and should present the law applicable to the particular facts proved * * *."

In *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508, this court said: "It is axiomatic that only instructions applicable to the law in any particular case should be given, * * *."

In *Gill v. People,* 139 Colo. 401, 339 P. (2d) 1000, it was said: "The instruction is not geared to the case which was being tried. Mere abstract statements of law or excerpts from court opinions generally should not be given as instructions. In the present case the legal conclusions set forth in this instruction were misleading and confusing. See *Lewis v. People,* 99 Colo. 102, 60 P. (2d)

1089, and *Gonzales v. People,* 128 Colo. 522, 264 P. (2d) 508; also *Harris v. People,* 32 Colo. 211, 75 P. 427, wherein the Court said: 'It is wrong for a court to instruct as to the law in the absence of facts to which it is rightly applicable, and it is just as erroneous to state abstract propositions of law, each applicable to a different state of facts, follow it up by applying one doctrine to a given hypothetical case, and say nothing to the jury about the application of the other and opposing doctrines. Such a method of advising a jury must result in injury. * * *.' "

▆ Another salutary rule to be followed in giving instructions is set forth in *Ellis v. People,* 114 Colo. 334, 164 P. (2d) 733: "It is the duty of the trial court to instruct the jury so plainly and accurately on the law of the case that they may comprehend the principles involved. * * *."

By instructing the jury on unlawful acts generally in the absence of evidence with reference thereto, the jury may well have considered such instructions as an invitation to proceed on the law without evidence. Certainly such instructions could only serve to confuse and mislead the jury and obscure the issues.

In the event of a retrial, venue should be proved, the cause of death should be established, the body should be identified as that of Mickey Francis, and the jury should be instructed *only* on the law of the case.

The judgment is reversed and the cause remanded for such further proceedings as may be deemed advisable, not inconsistent with the views herein expressed.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE PRINGLE concur.