**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Jesus Barrientos GARCIA, Defendant-Appellant.**

**No. 81CA1283.**

Colorado Court of Appeals, Div. II.

March 22, 1984.

Rehearing Denied April 26, 1984.

Certiorari Denied Nov. 13, 1984.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Valerie J. McNevin-Petersen, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Jesus Barrientos Garcia, appeals his conviction by a jury of the first degree murder of Herman Maestas. We affirm.

On April 8, 1981, Herman Maestas failed to attend work and a phone call to his apartment was unanswered. On April 9, 1981, Maestas' body was discovered in his apartment. A pathologist later testified that Maestas had been dead two or three days before the body was discovered. Part of a towel was protruding from the victim's mouth and an electrical cord was found tied around his neck.

The pathologist's autopsy revealed that Maestas had been struck on the head with a blunt object (possibly an empty vodka bottle found at the scene), and that his blood alcohol level was high. In addition, the autopsy revealed that Maestas was stabbed nearly a dozen times with a fork, the tines of which had penetrated his abdomen, liver, and thyroid gland; and that he had been stabbed with a dinner knife in his left lung and through both ventricles of the heart with such force that only the handle of the knife was left protruding from the body when it was discovered. The body also had a number of other abrasions and contusions, some of which were described as "defensive wounds."

The pathologist further testified that a towel and washcloth had been "rammed down" Maestas' throat, forcing his dentures into his larynx; and that Maestas had been strangled with the electrical cord. The pathologist determined that the cause of Maestas' death was asphyxiation.

On May 18, 1981, the defendant was arrested on a street in Laredo, Texas, after having called the police to turn himself in for the Colorado slaying. A Laredo police officer read defendant his *Miranda* rights at the time of his arrest. When asked if he understood his rights, defendant responded affirmatively. While being transported to the police station, defendant spontaneously stated that he had hitchhiked to Laredo, after having worked at Mercy Hospital for the previous three weeks.

Before being booked, defendant was again advised of his *Miranda* rights and, again, defendant stated that he understood his rights. In response to questions regarding whether he needed a lawyer, defendant replied, "No, I want to call my grandmother, advise her I turned myself in. I just want to get out of Laredo."

Defendant was then asked about what had happened during the incident in Colorado. He stated that he and his brother had been playing cards with Maestas when Maestas claimed defendant had been stealing and pulled out a gun, demanding the return of his money. Defendant stated that he then hit Maestas, a shot went out, and the gun fell from Maestas' hand. However, no gun or bullet or bullet holes were ever found.

Defendant then stated that he "went crazy and just started beating on [Maestas] until his brother pulled him off after they saw he was seriously hurt." He said that he and his brother then left the apartment and parted ways. The arresting officer then asked defendant why he turned himself in. Defendant responded that he "just couldn't take it anymore."

Defendant waived extradition and was transported to Jefferson County where, on May 18, 1981, he was charged with first degree murder and, later, with felony murder. On May 26, 1981, the public defender was appointed to represent defendant and on that same day he filed a motion for discovery. On June 19, 1981, defendant was arraigned and the court ordered that discovery materials were to be provided defendant no later than September 1, 1981.

On July 29, 1981, defendant filed a number of pretrial motions, including a second motion for discovery. On September 11, 1981, the court modified its order of June 19 and required discovery to be completed by October 1, 1981.

On October 1, 1981, the prosecution was informed for the first time by Laredo authorities that the defendant had made oral inculpatory statements at the time of his arrest. The next day, the prosecution advised both the court and defense counsel of this new development, whereupon defendant moved to suppress the statements.

The unavailability of the Laredo officers caused hearings on the suppression motion to be continued until October 20, when a conference phone call was scheduled between the Laredo officers and counsel for both defense and prosecution to discover the substance of the statements. Prior to that time, both prosecution and defense made a number of unsuccessful attempts to discover the content of defendant's statements.

On October 20, 1981, the telephone conference between the arresting Laredo police officer, prosecution, and defense counsel took place. On the following day, defendant moved to suppress the May 18 statements and continue the trial, both of which motions were denied.

Defendant's jury trial commenced on November 2, 1981. During trial, the court granted defendant's motion for judgment of acquittal as to the charge of felony murder. Defendant was subsequently convicted of first degree murder and sentenced to life imprisonment.

I.

Defendant's first argument is that, because the Laredo police failed to obtain an express oral or written waiver by defendant of his right to remain silent, the trial court erred in admitting into evidence his May 18, 1981, statements to the Laredo police. We disagree.

▮ We agree with defendant that a valid waiver will not be presumed simply from the silence of the accused after warnings have been given, or simply from the fact that a confession was in fact "eventually obtained," *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *People v. Chavez*, 632 P.2d 574 (Colo.1982). However, here, the defendant was not silent after the warnings were given. Rather, he stated on two separate occasions that he understood those rights. In addition, defendant's confession was not "eventual"—that is, it was not the result of

the type of "lengthy interrogation or incommunicado interrogation" to which the Supreme Court referred in *Miranda.* Rather, here, defendant's confession immediately followed his statements that he knew and understood his constitutional right to remain silent.

■ Contrary to defendant's contention, an *express* waiver by a defendant of his right to remain silent is not a necessary prerequisite to the admission of that defendant's confession as voluntary. To the contrary:

"Strong and unmistakable circumstances may upon occasion establish an effective equivalent to an express waiver. To constitute such a waiver, the attendant facts must show clearly and convincingly that the accused did relinquish his constitutional rights knowingly, intelligently and voluntarily." *Roybal v. People,* 178 Colo. 259, 496 P.2d 1019 (1972).

The record here shows strong and unmistakable circumstances from which it can clearly and convincingly be said that defendant knowingly, intelligently, and voluntarily waived his constitutional right to remain silent.

The record shows that, even before his first contact with Laredo police, defendant was intent upon confessing to authorities the murder which he had committed. Upon his initial contact with police, defendant was extremely cooperative and volunteered a great deal of information before he was even questioned. Defendant was twice or thrice advised of his constitutional rights and, on two occasions, defendant specifically stated that he understood those rights. The fact that the defendant continued to make statements in response to questions immediately after he voiced his understanding of his right to remain silent demonstrates that defendant's confession was a result of the activity of his own conscience, rather than the result of torture or treacherous interrogation against which our Fifth Amendment was designed to protect us.

We perceive no error in the trial court's admission of defendant's confession. De-

fendant cites extensively from *Miranda v. Arizona, supra.* However, the United States Supreme Court, in that landmark opinion, cautioned against the hyperextension of the holding therein. Specifically, it emphasized that:

"There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

Therefore, the trial court did not, by denying defendant's suppression motion, deprive him of his constitutional rights.

II.

Defendant's second contention is that the trial court deprived him of his rights to discovery, due process of law, and the effective assistance of counsel by denying his motion for a continuance after defense counsel was advised, 13 days prior to trial, of the contents of defendant's May 18, 1981, inculpatory statements. We disagree.

■ The decision to grant or deny a motion for continuance is committed to the sound discretion of the trial court and will be reversed on appeal only upon a showing of a clear abuse of discretion resulting in manifest injustice. *U.S. v. Gonzales-Palma,* 645 F.2d 844 (10th Cir.1981), *cert. denied, Gonzales-Garcia v. U.S.,* 454 U.S. 861, 102 S.Ct. 316, 70 L.Ed.2d 159 (1981) and 454 U.S. 869, 102 S.Ct. 335, 70 L.Ed.2d 172 (1981); *see People v. Mann,* 646 P.2d 352 (Colo.1982).

■ Here, we find neither an abuse of discretion, nor any manifest injustice to defendant for two reasons. First, we find no violation of Crim.P. 16 and, consequently, no denial of due process. *People v. McKnight,* 626 P.2d 678 (Colo.1981), upon which defendant relies, states that:

"Crim.P. 16 requires that every statement made by the accused *which is in*

*the possession or control of the district attorney* and which relates [to the alleged crime] ... must be disclosed to the defense upon an appropriate motion." (emphasis supplied)

■ Although statements within the possession of the police have been deemed to be "within the possession or control of the district attorney," such statements are within the prosecuting attorney's possession or control only if the police who possess the statements are the police in the county or district of trial. *Dickerson v. People*, 179 Colo. 146, 499 P.2d 1196 (1972) (written statements in the files of the Criminal Investigation Department at Fort Bliss, Texas, were "outside the possession and control of the district attorney [of Pueblo County]" and, therefore, could not have been produced pursuant to Crim.P. 16(b)); *see also Ortega v. People*, 162 Colo. 358, 426 P.2d 180 (1967).

Here, the record shows that, despite its diligent efforts to secure written reports from Laredo detailing defendant's May 18 statements, the prosecution was not in the possession or control of those statements; rather, they were exclusively possessed by the Laredo authorities. Therefore, there was no discovery violation by the Jefferson County district attorney.

■ Second, the trial court's denial of a continuance did not deprive defendant of his right to effective assistance of counsel. As a starting point, we emphasize our agreement with defendant that the effective assistance of counsel encompasses a guarantee that defense counsel shall have sufficient time to prepare adequately for trial. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *People v. O'Neill*, 185 Colo. 202, 523 P.2d 123 (1974).

■ However, in *U.S. v. Gay*, 623 F.2d 673 (10th Cir.1980), *cert. denied*, 449 U.S. 957, 101 S.Ct. 366, 66 L.Ed.2d 222 (1980), the court held that it was not an abuse of discretion to deny a continuance sought by defense counsel in order to study the impact of testimony contained in a transcript, where defense counsel had three to four days to study the transcript before trial commenced. In the case before us, defense counsel had one month from the date when he first learned of the existence of defendant's incriminating statements, and 13 days from when he learned of the substance of those statements, until trial commenced. We hold that this amount of time was sufficient for defense counsel to prepare adequately for trial.

### III.

Defendant next contends that the trial court erred not only in instructing the jury that "motive is not an element of the charge of murder in the first degree," but also in preventing defense counsel from arguing to the jury the fact that the prosecution did not prove its theory in its opening statement that robbery was defendant's motive for the murder. We find no error in either the instruction or the ruling.

### A.

Defendant argues that instructing the jury that motive is not an element of first degree murder was improper because it highlighted particular evidence in a negative fashion. Defendant reasons that since a defendant is not entitled to an instruction highlighting the fact that the People failed to prove motive, *Armijo v. People*, 134 Colo. 344, 304 P.2d 633 (1956), that, therefore, the converse must also be true. However, the converse is not the law.

■ "It is the duty of the trial court to instruct the jury so plainly and accurately on the law of the case that they may comprehend the principles involved.... The instructions to the jury should relate and be confined to issues concerning which evidence has been presented.... Accordingly, the sufficiency of instructions must be determined always by the facts of each case ...." *Rumley v. People*, 149 Colo. 132, 368 P.2d 197 (1962).

■ Here, defendant was tried on a charge of felony murder, as well as a charge of murder by deliberation. In opening argument, the district attorney advised

the jury that his theory of the case as to the felony murder charge was that the defendant killed the victim during the course of robbing him. However, once the court granted defendant's motion for judgment of acquittal as to the felony murder count, the prosecution no longer bore the burden to prove that the murder was committed in the course of or in furtherance of another crime such as robbery. Therefore, the instruction given here was not only a correct statement of the law as contained in § 18–3–102, C.R.S. (1978 Repl.Vol. 8); but also, under the facts in this case, it was reasonable in light of the jury's understandable confusion between felony murder and murder by deliberation. Therefore, the instruction was necessary to the jury's accurate comprehension of the applicable law.

### B.

Defendant further asserts that the trial court's ruling prohibiting defense counsel from arguing in closing that the prosecution had failed to prove the motive of robbery was unconstitutionally restrictive. We do not agree.

■■■■■ "It is fundamental in Colorado that the scope of final argument rests in the sound discretion of the trial court ... which [discretion] will not be disturbed by an appellate court unless it is clearly apparent that in so ruling the trial court grossly abused its discretion, which abuse resulted in prejudice and a denial of justice." *People v. Motley*, 179 Colo. 77, 498 P.2d 339 (1972). Here, inasmuch as the felony murder charge was dismissed at the close of the evidence, argument on the issue of whether robbery had been proven would only have served to divert the jury from the issues pertinent to first degree murder. *See* I *ABA, Standards for Criminal Justice, Defense Function*, Standard 4–7.8(d) (2d ed. 1982). Hence, the trial court did not abuse its discretion in precluding argument on this extraneous issue.

### IV.

Defendant's next argument is that, in connection with his asserted defense of self-defense, the trial court's refusal to give his tendered instructions on "retreat to the wall," "apparent necessity," and "acting on appearances" amounted to reversible error. Again, we disagree.

■■■■■ "It is not reversible error to refuse an instruction tendered by the defense when the contents of that instruction are embodied in the court's other instructions." *People v. Lee*, 199 Colo. 301, 607 P.2d 998 (Colo.1980). Here, the trial court found that the issue of self-defense had been raised "as a result of a modicum of testimony" and, as in *Lee*, the trial court gave an approved pattern jury instruction on self-defense. Since each of defendant's tendered instructions deal with matters of self-defense, we conclude, as did our Supreme Court in *Lee*, that "[w]hen the instructions are viewed as a whole, the jury was properly instructed on self-defense."

Furthermore, it is obvious from the state in which Maestas' body was found that, even if defendant was acting in self-defense, he greatly exceeded the amount of force which was necessary to subdue Maestas. No reasonable jury could have found that the totality of gagging with a towel and washcloth, multiple stabbing with a fork and knife, and strangulation with an electrical cord was the least amount of force necessary to repel any attack by the victim.

Defendant's remaining contention of error is without merit.

Judgment affirmed.

KELLY and BABCOCK, JJ., concur.