The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Steven **SILVA**, Defendant–Appellant.

No. 97CA0962.

Colorado Court of Appeals, Div. V.

April 15, 1999.

As Modified on Denial of Rehearing May 27, 1999.

Certiorari Denied Nov. 1, 1999.*

---

* JUSTICE HOBBS would grant as to the following issues:

Under what circumstances a trial court may tender a jury instruction limiting the affirmative defenses of self-defense and defense of others when the defendant or his complicitor provoked the confrontation, and whether the trial court erred in finding those circumstances existed in this case.

Whether a defendant may assert the affirmative defense of use of force in defense of another when the one he was defending had no right to claim self-defense as either the initial aggressor or the one who provoked the assault.

Whether the court of appeals erred in refusing to follow precedent by failing to consider alternate grounds which would have supported the trial court's admission of the facts of the defendant's prior offense, and by, upon re-trial, forcing the

prosecution to stipulate to a fact in controversy in order to prevent the jury from hearing evidence which is properly admissible pursuant to C.R.E. 404(b).

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Miles D. Madorin, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Steven Silva, appeals from the judgment of conviction entered upon jury verdicts finding him guilty of attempted reckless manslaughter, first degree assault, and second degree assault. We reverse and remand for a new trial.

According to the evidence presented at trial, the two victims and their three friends went to a bar. However, two of the friends were denied admittance because of their age and decided to wait in the truck in which they were riding while the others went inside briefly. Also in the bar were defendant and his two friends. They left at about the same time as the victims.

Prior to the affray giving rise to the charges against defendant, there was no meeting or altercation between the two groups. However, as one of the victims' friends was about to get into the truck, he instead approached defendant and one of his friends. Words were exchanged and the other of defendant's friends came around from the far side of the truck and hit the victims' friend. The victims then came over and began hitting the person who had struck the first blow. Defendant and his friends and the victims and their friends entered into the affray.

As one of defendant's friends was fighting with the first victim, defendant jumped on his back, took out his knife, and began stabbing the first victim in the arm. The second victim, not knowing that defendant had a knife, knocked defendant off of the first victim. Defendant then turned around and swung at the second victim, stabbing him in the chest and arm. The victims and their friends fled. Defendant and his friends remained at the bar where defendant subsequently was arrested.

At trial, defendant asserted the affirmative defense of self-defense and defense of others. In support of his claim, he presented evidence that he had used justifiable force when the victims and their friend returned the first blow, made by defendant's friend, with excessive force. Therefore, he asserted, he had acted reasonably in coming to his friends' defense with his knife. Defendant was convicted of the charges from which he now appeals.

### I.

Defendant first contends that the trial court erred in instructing the jury concerning self-defense. He does not argue that the instruction incorrectly stated the law of self-defense. Rather, he argues that the instruction was not supported by the evidence and was misleading to the jury. We agree.

■ The trial court has the duty to instruct the jury properly on all matters of law. *People v. Hardin,* 199 Colo. 229, 607 P.2d 1291 (1980).

■ An instruction on self-defense is warranted if there is some evidence to support it. However, the court should not instruct on an abstract principle of law unrelated to issues in controversy. *People v. Goedecke,* 730 P.2d 900 (Colo.App.1986) (instructions must reflect evidence produced at trial).

### A.

Defendant argues that the trial court violated his right to present a defense by instructing the jury on the issue of provoking the victim as an exception to self-defense. We agree.

We note, initially, that the People argue that defendant's contention must be reviewed for only plain error because the grounds he asserts as error on appeal are not those he presented to the trial court. However, defendant argued before the court that he did not provoke anybody. That he did not provoke the victim and was not the initial aggressor, is, in effect, the sum and substance of defendant's argument at trial and on appeal. Thus, we consider defendant's contention as properly raised and preserved.

■ If the record contains any evidence tending to establish the affirmative defense of self-defense, then a defendant is entitled to have the jury properly instructed as to

such defense. *Idrogo v. People,* 818 P.2d 752 (Colo.1991).

Here, the trial court, over defendant's objection, instructed the jurors, using the language of § 18–1–704(3)(a), C.R.S.1998, that:

3. A person is not justified in using physical force if:

a. with intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that person.

■ Under the common law, a defendant could not avail himself of the defense of self-defense if the necessity for such defense was brought on by a deliberate act of the defendant, such as being the initial aggressor or acting with the purpose of provoking the victim into attacking. *See Boykin v. People,* 22 Colo. 496, 45 P. 419 (1896) (defendant who seeks the difficulty cannot later assert self-defense); *Bush v. People,* 10 Colo. 566, 16 P. 290 (1888) (although defendant's entering property to reclaim it was lawful, if such action was taken with intent to provoke the victim into an affray so that defendant, under such pretext, could kill victim, then self-defense is not a defense).

The provocation limitation on self-defense is codified under § 18–1–704(3)(a). *See People v. Willner,* 879 P.2d 19 (Colo.1994).

■ According to the plain language of the statute, a defendant's assertion of self-defense is lost if he or she acted with intent to provoke the victim into attacking first in order to provide the defendant with the excuse to injure or kill the victim. *See People v. Willner, supra* (section 18–1–704(3)(a) governs the use of self-defense by the one who provokes the attack); *Kelley v. State,* 968 S.W.2d 395 (Tex.Ct.App.1998) (provocation instruction is used to inform jurors that a defendant forfeits his right to claim self-defense if he or she provoked the difficulty in order to have a pretext to kill or injure the victim).

■ In order to warrant the giving of this instruction, the prosecution has the burden of establishing that the defendant intended to harm the victim and that he or she intended the provocation to goad the victim into attacking him or her as a pretext for injuring or killing the victim. *See Bush v. People, supra; State v. Heath,* 35 Wash.App. 269, 666 P.2d 922 (1983) (evidence showed that defendant's words and actions intentionally precipitated fight in which the victim was killed). In contrast to the initial aggressor limitation, the provocation limitation applies in situations where the defendant was not the initial aggressor.

■ An instruction on provoking the victim, therefore, should be given if: 1) self-defense is an issue in the case; 2) the victim makes an initial attack on the defendant; and 3) the defendant's conduct or words were intended to cause the victim to make such attack and provide a pretext for injuring the victim. *See Kelley v. State, supra.*

■ Here, although there was no dispute that there had been no confrontation between defendant and his friends and the victim and his friends either in the bar or in the parking lot as the two groups walked to their vehicles, there was conflicting evidence as to the cause of the fight. Evidence was presented that an argument started between defendant and one of his friends and one member of the other group after both groups had begun to get into their trucks; however, no witness could recall the content of the discussion or who had spoken first.

■ Further, the victims who were stabbed were not present when words first were exchanged. Indeed, the victims did not enter the fight until after defendant's friend had thrown the first punch. *See Vigil v. People,* 143 Colo. 328, 353 P.2d 82 (1960) (one who has injected himself into a mild situation is not deprived of right of self-defense if the situation, beginning with only argument, develops to a point where physical force would be justified to protect himself); *Bush v. People, supra* (insulting language is not a provoking incident).

Viewing the evidence in a light most favorable to the giving of this instruction, *People v. Cole,* 926 P.2d 164 (Colo.App.1996), we conclude there simply was no evidence presented that defendant intended to provoke a fight with the victims or their friend so that he could inflict injury upon them under the

guise of such provocation. In the absence of such evidence, it was error for the trial court to give the jury an instruction on provoking the victim. *See State v. Turner,* 33 Conn. App. 616, 637 A.2d 3 (1994) (defendant must intend to cause harm to victim under guise of provocation).

### B.

 Reversible error occurs if the instructions create a reasonable possibility that the jury could have been misled or improperly contribute to a defendant's conviction. Jury instructions must be considered as a whole in determining whether a particular instruction was so misleading as to constitute reversible error. *People v. DeHerrera,* 697 P.2d 734 (Colo.1985); *People v. Wadley,* 890 P.2d 151 (Colo.App.1994) (giving of improper jury instruction is reversible error if it materially and substantially prejudices defendant or affects outcome of trial).

 If, as here, an affirmative defense is available under the statutory scheme, the trial court has the duty to determine if sufficient evidence has been presented to raise a factual issue as to the existence of the defense. *See People v. Fincham,* 799 P.2d 419 (Colo.App.1990) (whether evidence raises affirmative defense is a question of law).

 Similarly, whether the evidence presented warrants giving a further instruction as to exceptions to the asserted affirmative defense also lies within the court's province.

 Here, the court gave the provocation of the victim instruction over defendant's objection because it found the evidence to be in "total disarray." Although it is appropriate for the jury to resolve questions of fact, the court has the duty to determine first which issues have been raised by the evidence presented. Although the giving of an instruction even if there is no evidence to support it may be considered harmless error if no reasonable possibility exists that the jury was misled, *People v. Manzanares,* 942 P.2d 1235 (Colo.App.1996), such is not the case here. If, as here, the lack of any evidence to support the giving of an instruction creates a situation in which it would be misleading and confusing for the trial court

to ask the jury to resolve an issue that does not exist, then the error cannot be considered harmless. Here, because the trial court did not ensure that the jury received a proper instruction setting forth the rule of law relied upon by defendant in support of his theory of the case, we conclude that the judgment of conviction cannot stand and the case must be remanded for a new trial.

### II.

Because certain issues may arise again on retrial, we address them here. *See People v. Jones,* 675 P.2d 9 (Colo.1984).

### A.

Defendant argues that the trial court erred in instructing the jurors concerning the initial aggressor exception to self-defense and defense of others. Specifically, defendant argues that, because he was not the initial aggressor, the evidence was insufficient to support the giving of this instruction. The People contend that the instruction was proper because defendant's friend, as the initial aggressor, could not assert self-defense and, therefore, likewise, defendant could not assert defense of others. Assuming that the same or similar evidence is introduced on retrial, we conclude that the evidence creates questions of fact for the jury to determine whether the friend was the initial aggressor and, if so, whether defendant was justified in using physical force to come to his friend's aid. We further conclude that the instructions given by the trial court, with some modification, will properly inform the jury of these fact questions and the law necessary to make its determination.

### 1.

 A reasonable belief that one is defending against the use of unlawful force is the touchstone of self-defense and, thus, of defense of others. *People v. Suazo,* 867 P.2d 161 (Colo.App.1993).

 In determining whether an initial aggressor instruction is appropriate under the circumstances of a case in which hostilities begin and escalate among a group of

people, the conduct of the defendant in the context of the situation must be the focus of any analysis of the defendant's right to self-defense. *People v. Beasley*, 778 P.2d 304 (Colo.App.1989).

■ It is undisputed that defendant did not strike the first blow and, therefore, was not himself the initial aggressor. That he may have uttered some insult or engaged in an argument also would not justify identifying defendant as the initial aggressor. However, there was conflicting testimony as to how the fight actually began. Defendant's friend testified that he threw the first punch when he saw one of the other persons take an aggressive stance and draw his arm back as if to hit defendant's other friend. The victims testified, to the contrary, that defendant's friend threw the first punch without any provocation. This evidence created questions of fact for the jury as to who, other than defendant, was the initial aggressor, and whether defendant responded reasonably under the circumstances once the fight began. *See State v. Amado*, 50 Conn.App. 607, 719 A.2d 45 (1998) (person may respond with physical force to reasonably perceived threat of physical force without being the initial aggressor), *cert. granted*, 247 Conn. 953, 723 A.2d 811 (1999).

Nevertheless, the People contend that a defendant, when asserting defense of others, "stands in the shoes" of the person being defended. If, they argue, that other person is not entitled to assert self-defense, then the defendant is precluded on that basis from asserting defense of others. We disagree.

■ As a general rule, a person coming to the aid of a third party with a reasonable belief that his or her intervention is necessary to prevent injury to the third party is entitled to assert defense of others to absolve or mitigate a charge of assault or homicide. The affirmative defense of defense of others is not absolutely barred by the wrongful actions of the third party. *See* Bendinelli & Edsall, *Defense of Others: Origins, Requirements, Limitations and Ramifications*, 5 Regent U.L.Rev. 153 (1995) (tracing development of doctrine of defense of others).

The majority of jurisdictions today, for public policy reasons, allow a defendant to assert some form of defense of others based on a reasonable belief by a defendant that intervention was necessary to protect the person he or she perceived as being under attack. *See State v. Holmes*, 208 N.J.Super. 480, 506 A.2d 366 (1986) (whether a defendant may intervene to defend a third party is determined by the subjective intent of the defendant subject to an objective finding by the jury that the defendant reasonably concluded that the third party was in danger); *State v. Chiarello*, 69 N.J.Super. 479, 174 A.2d 506 (1961) (people should not be discouraged by thought of criminal prosecution if they come to another's aid in good faith); Model Penal Code § 3.09, comment 2 (person should not be convicted of crime requiring intent if person was acting under a mistake that, had the facts been as he or she supposed, would have left that person free from guilt).

■ Similarly, under the Colorado statute defining self-defense, § 18–1–704(1), C.R.S.1998, a person coming to the aid of a third party must have a reasonable belief that the third party is in imminent danger of becoming the victim of unlawful force. The statute does not require that such person have actual knowledge of the circumstances surrounding the use of force by another, but requires only a reasonable belief of the necessity to intervene. *See Sanchez v. People*, 820 P.2d 1103 (Colo.1991) (person asserting self-defense may act on appearances rather than reality; question is whether the defendant's conduct was reasonable under the circumstances as he or she perceived them to be).

Thus, on retrial, regardless whether defendant's friend, and not defendant, was the initial aggressor, if the same or similar evidence is presented, questions of fact concerning defendant's action under the circumstances of the fight are raised for the jury's determination and the jury must be instructed accordingly.

2.

At trial, the court, over defendant's objection, instructed the jury that:

3. A person is not justified in using physical force if:

...

b. he is the initial aggressor, except that his use of physical force upon another person under the circumstances is justifiable if he withdraws from the encounter and effectively communicates to the other person his intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force.

The court separately instructed the jurors that:

A man has a right to defend himself and others against what he reasonably believes to be the unlawful assaults and attacks of others. He may repel force by force.

A man has the right to make decisions and to act upon the circumstances as they reasonably appeared to him at the time, and as they may have appeared to a reasonable person. A man may act out of apparent necessity, if his perceptions are reasonable, even though the perceived danger does not exist.

In deciding whether or not the defendant had reasonable grounds for believing that there was imminent danger, you should determine this question from the standpoint of the defendant at the time he acted, in the circumstances in which he found himself. You must determine whether he acted as a reasonable person in those circumstances.

■■■ The trial court has a duty to instruct the jury properly concerning all the issues supported by the evidence. *Rumley v. People*, 149 Colo. 132, 368 P.2d 197 (1962).

■■■ Generally, instructions phrased in the language of the statute are proper. *Blincoe v. People*, 178 Colo. 34, 494 P.2d 1285 (1972). However, if a statutory instruction does not fit a particular case, or if supplementary instructions are needed to state a defendant's position, then such instructions should be submitted to the jury. *Bustamonte v. People*, 157 Colo. 146, 401 P.2d 597 (1965).

Here, although no evidence was presented that defendant, himself, was the initial aggressor, as discussed, the evidence was sufficient to raise a question of fact concerning defendant's right to come to the defense of another person who might have been the initial aggressor. Thus, on remand, if the same or similar evidence is presented, it would be proper for the trial court to instruct the jury concerning the limitation on an initial aggressor's right to assert self-defense, and the right of the defendant to act upon his reasonable belief under the circumstances. However, to clarify the applicable law under the circumstances of this case, the court should also instruct the jury that defendant, in coming to the aid of another who is the initial aggressor, may defend the other only from that which he reasonably believes to be the use of excessive force.

### B.

Defendant also contends that the trial court erred in failing to instruct the jurors that the use of deadly force with a deadly weapon may be justified as self-defense. He argues that this omission and the prosecution's closing argument emphasizing defendant's use of a knife misled the jury into returning an unreliable verdict. We disagree.

■■ According to *COLJI–Crim.* No. 7:17 (1983) (Notes on Use), the instruction on the use of deadly physical force is to be used only if the victim died. Here, no victim died and, thus, the trial court's instruction that defendant was justified in the use of physical force if he used that degree of force which he reasonably believed to be necessary properly reflected the amount of force to which defendant was entitled in asserting self-defense. *See People v. Hennion*, 923 P.2d 256 (Colo. App.1995) (trial court may refuse instruction if instructions given adequately cover the subject of the refused instruction).

### C.

Defendant also contends that the trial court impermissibly burdened his right to testify by its ruling that he would be subject to cross-examination about his conviction resulting from a prior altercation in another

state if he chose to testify. On remand, this evidence should not be admitted.

■■■ A defendant who chooses to testify is subject to cross-examination and full inquiry on issues of credibility. The extent and type of cross-examination is within the sound discretion of the trial court. *People v. Ibarra,* 849 P.2d 33 (Colo.1993).

■■■ Evidence of a misdemeanor charge or conviction is not admissible under § 13–90–101, C.R.S.1998, in order to impeach the general credibility of a witness. However, this statute does not prohibit testimony concerning such charge or conviction for other admissible purposes. *People v. Metcalf,* 926 P.2d 133 (Colo.App.1996).

Here, the prosecution sought to cross-examine defendant, if he chose to testify, concerning a misdemeanor conviction resulting from an altercation in another state in which defendant stabbed a person. The purpose of this evidence was to show that defendant possessed the "knowingly" *mens rea* requirement of attempted second degree murder in that he knew from the earlier incident that the action of stabbing a person in the chest was likely to result in death. Defendant argues that, because he was willing to stipulate to his knowledge that his action was likely to result in death, the prejudicial impact of this evidence far outweighed any probative value it might possess. In admitting this evidence for impeachment purposes, the trial court applied the analysis under CRE 404(b) for determining the admissibility of evidence prior bad acts.

Although evidence of other crimes, wrongs, or other acts is not admissible to prove a defendant's character in order to show that he or she acted in conformity therewith, such evidence may be admitted for other valid purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

■■■ In determining whether such evidence is admissible under CRE 404(b), the trial court should consider whether: 1) the proffered evidence relates to a material fact in question; 2) the evidence is logically relevant; 3) such relevance is independent of the inference that defendant has acted in conformity with a bad character; and 4) the probative value is substantially outweighed by the danger of unfair prejudice to the defendant. The trial court has substantial discretion in determining whether to admit evidence of other acts. *People v. Spoto, supra.*

Here, the trial court found that the two incidents were substantially similar. Both were altercations that began as fist fights and ended when defendant pulled out a knife and stabbed the victim in the chest. Although defendant was willing to stipulate to his knowledge that the action of stabbing a person in the chest was likely to result in death and that he had acted purposefully in the defense of another, the court also found that the prior incident was relevant to defendant's state of mind and knowledge that his actions that night were likely to result in serious injury or death. Additionally, because defendant previously had argued that he had acted without knowing what he was doing or what injury he had inflicted, the court determined that defendant's knowledge was in dispute. Further, the court found that the relevance of the evidence existed independent of whether defendant acted in conformity with a bad character and that it was not substantially outweighed by the danger of unfair prejudice. On the basis of this ruling, defendant chose not to testify.

■■■ However, because defendant was willing to stipulate to the mental state element of the offense which the prosecution was required to prove, there was no material fact in dispute. Thus, the probative value of the evidence was minimal. The probative value of defendant's conviction was lessened further because the knowledge that a risk of death is a likely result of being stabbed in the chest is a fact readily perceived by persons of common intelligence and understanding. Although a trial court is not obliged to accept a defendant's proposed stipulation in lieu of allowing the prosecution to prove its case in the manner it sees fit, the court still must balance the probative value of the proffered evidence against the danger of unfair prejudice. Here, defendant's willingness to

make such a stipulation and the common knowledge of the risk associated with defendant's action lead us to conclude that the danger of unfair prejudice resulting from the admission of this evidence would far outweigh any probative value it might have. *See People v. McGregor*, 757 P.2d 1082 (Colo. App.1987) (if stipulation has probative value similar to that of the proffered evidence and such value is outweighed by danger of unfair prejudice, court may require prosecution to accept the stipulation).

On remand, if defendant is willing to stipulate to his knowledge that his action of stabbing the victim was likely to result in death, the court should not admit evidence of the previous fight. Because we conclude that this evidence should not be admitted on retrial, we need not address whether the trial court's ruling impermissibly burdened defendant's decision whether to testify.

### D.

Lastly, we disagree with defendant's contention that the trial court erred in permitting impeachment of one of his witnesses concerning a guilty plea to a felony offense. Specifically, he argues that, although the witness had pled guilty to a felony drug offense, he had been found by the court to be a person in need of treatment under § 18–18–404(2), C.R.S.1998, the proceedings had been suspended, and no sentence had been imposed. Therefore, he argues, no felony conviction existed that could be used for impeachment purposes and the trial court erred in admitting this evidence.

■ Under § 13–90–101, a prior felony conviction may be introduced for the purpose of impeaching the credibility of any witness. A trial court has no discretion to prohibit the use of a felony conviction to impeach a witness' testimony. *See People v. Wright*, 678 P.2d 1072 (Colo.App.1984).

■ A prior felony conviction, obtained by a guilty plea, is admissible for impeachment purposes under § 13–90–101. *See People v. Gallegos*, 950 P.2d 629 (Colo.App.1997). A defendant's guilty plea under § 18–18–404, C.R.S.1998, also is considered to be a conviction because it establishes guilt. *See People*

*v. Roberts*, 865 P.2d 938 (Colo.App.1993); *People v. Vollentine*, 643 P.2d 800 (Colo.App. 1982) (evidence of prior guilty plea, as evidence of prior conviction, is admissible for impeachment purposes regardless of whether sentence has been imposed).

■ Here, at the time of trial, defendant's witness had been ordered into treatment after the entry of his guilty plea and the court's determination that he was a person in need of treatment under § 18–18–404(2). That the proceedings had been suspended does not change the fact that a felony conviction existed until the deferred sentence was set aside upon successful completion of the rehabilitation program. Under these circumstances, the witness' conviction was appropriately admitted for impeachment purposes. *Cf. People v. Vollentine, supra* (evidence of guilty plea entered in deferred sentencing stipulation may be used for purposes of impeachment if there has been no revocation of the deferred sentence).

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge BRIGGS and Judge VOGT concur.