23CA0010 Peo v Scott 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0010
City and County of Denver District Court No. 21CR5179
Honorable Martin F. Egelhoff, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Foster Lee Scott,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Philip J. Weiser, Attorney General, Jacey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julieanne Farchione, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Foster Lee Scott, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault – victim incapable of appraising nature of their conduct. We affirm.

## I.    Background

¶ 2    The jury heard evidence that would support the following findings.

¶ 3    A.A. was in her friend's car in a fast-food drive-through line. A.A., who was intoxicated, got out of the vehicle and wandered in the direction of a nearby parking lot.  At that time, Scott was in the parking lot waiting for a friend.  Scott started a conversation with A.A.  A.A. and Scott had conflicting recollections of what happened the remainder of that night.

¶ 4    The next morning, A.A. woke up, still in the parking lot, naked under Scott's sleeping bag.  Scott was asleep next to her without pants on.  After Scott woke up, the two briefly spoke before A.A. left the parking lot and made her way to her friend's house.  Later that day, A.A. filed a report with the police alleging that Scott had sexually assaulted her, and underwent an examination with a sex assault nurse examiner (SANE).

¶ 5       The prosecution charged Scott with sexual assault of a victim who was incapable of appraising the nature of her conduct pursuant to section 18-3-402(1)(b), C.R.S. 2025.  At trial, A.A. testified that she woke up during the night to Scott having sex with her.  Scott testified that he had fallen asleep after conversing with A.A. and awoke to A.A. on top of him, grinding, and that he pushed her off by her breasts before going back to sleep.  Scott's defense theory at trial was that A.A. attempted to initiate a sexual encounter with him, and that his use of methamphetamine earlier that evening prevented him from engaging in sexual activities.  The jury convicted Scott as charged.  The court sentenced Scott to five years to life in the custody of the Department of Corrections.

## II.    Impeachment with Prior Conviction

¶ 6       Scott contends that the trial court erred, and consequently violated his due process rights, when it allowed the prosecution to impeach him with his prior felony conviction for failure to register as a sex offender.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 7       We review de novo whether a due process violation occurred. *People v. Burlingame*, 2019 COA 17, ¶ 11.  And "we review a trial

2

court's evidentiary rulings for an abuse of discretion." *People v. Clark*, 2015 COA 44, ¶ 14. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People v. Williams*, 2019 COA 32, ¶ 20.

¶ 8 When a witness chooses to testify, "the credibility of the witness may be drawn in question, . . . [and] the conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness." § 13-90-101, C.R.S. 2025. "The fact of such conviction may be proved like any other fact, not of record, either by the witness [themself], who shall be compelled to testify thereto, or by any other person cognizant of such conviction as impeaching testimony or by any other competent testimony." *Id.*

### B.    Analysis

¶ 9 Scott argues that the trial court violated his right to a fair trial by an impartial jury when it allowed the prosecution to impeach Scott through his 2016 felony conviction for failure to register as a sex offender. In support of this argument, Scott contends that the trial court abused its discretion by (1) admitting the felony conviction because it "stemmed from" a juvenile adjudication; (2) failing to conduct an evidentiary balancing test prior to the

3

admission of the conviction; and (3) refusing to sanitize the nature of the prior felony conviction.  We discern no error.

    1.    Scott's Juvenile Adjudication for a Sex Offense Has No Bearing on Whether Use of his Adult Felony Conviction Was Proper Impeachment

¶ 10    Scott argues that his prior felony conviction for failing to register as a sex offender was inadmissible because the impetus of his obligation to register as a sex offender was a juvenile adjudication for sexual assault that occurred when he was fifteen years old.  We recognize that a "Colorado juvenile delinquency adjudication may not be used for impeachment purposes because such an adjudication does not occur in a criminal proceeding and, therefore, is not a felony conviction." *People v. D'Apice*, 735 P.2d 882, 883 (Colo. App. 1986).  But the prosecutor did not impeach Scott with his juvenile adjudication; he was impeached with his felony conviction for failure to register, which occurred when he was twenty-seven years old.  Scott cites no authority — and we are aware of none — supporting his contention that an adult felony conviction for failure to register as a sex offender does not count as a felony under section 13-90-101 if the registration obligation arose from a juvenile adjudication.  Significantly, this contention finds no

4

safe harbor in the language of the statute itself, which unequivocally applies to "*any* felony." § 13-90-101 (emphasis added).

¶ 11     Scott also argues that the trial court should have considered (and we should consider) the effects of HB 21-1064, "which created an auto-removal process for juvenile registrants [from the sex offender registration] who reach twenty-five years of age or are seven years from the date they were required to register." Scott argues that the trial court should not have considered his felony conviction for failure to register under section 13-90-101 because he would have been automatically removed from the sex offender registry if HB 21-1064 had been in effect at the time of his conviction. In sum, Scott argues that because he is no longer required to register as a sex offender (and would not have been required to do so had the legislature enacted the 2021 statute six years earlier), he is somehow protected from having that felony used to impeach his credibility.

¶ 12     Again, Scott cites no authority for this argument. Indeed, existing precedent requires the opposite conclusion. "[T]he legislative intent underlying the statute is to classify a crime as a

5

felony . . . based upon its classification *at the time of the commission of the offense.*" *People v. Anders*, 559 P.2d 239, 242 (Colo. App. 1976) (emphasis added). Scott committed a felony when he failed to register as a sex offender within the required timeframe. The subsequent passage of HB 21-1064 "does not change the fact that [Scott] did, at the time, commit a felony." *Anders*, 559 P.2d at 239.

2. Trial Court Was Not Required to Evaluate the Admission of the Felony Conviction Under CRE 403 or CRE 404(b)

¶ 13    Scott next contends that the trial court erred when it failed to conduct a balancing test under CRE 403 or to evaluate the conviction under CRE 404(b) prior to allowing the prosecutor to cross-examine Scott on his felony conviction. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. And "[e]vidence of any other crime . . . is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1).

¶ 14    Scott argues that we should look to the holding in *Old Chief v. United States*, 519 U.S. 172, 180 (1997), in which the United States Supreme Court held that, when a prior felony conviction is an

element of the substantive offense with which the defendant is charged, the admission of the name and nature of the defendant's prior conviction was more prejudicial than probative given the similarities between that prior offense and the one at issue. Notably, Scott concedes that "the holding in *Old Chief* was limited to cases involving proof of felon status," but nevertheless argues that "its rationale is equally applicable here." We disagree.

¶ 15    In *Old Chief*, the Supreme Court acknowledged that in the context of proving a defendant's status as a felon for purposes of the substantive elements of the offense charged, "the fact of the qualifying conviction is alone what matters under the statute," and the admission of the name and the nature of the offense served no additional purpose. *Id.* at 190. But the Supreme Court acknowledged that the specific felony conviction may have been proper for impeachment but for the fact that the defendant did not testify. *Id.* at 176 n.2.

¶ 16    We conclude that *Old Chief* has no application here because, as Scott concedes in his opening brief, trial courts have "no discretion to prohibit the use of a felony conviction to impeach a witness' testimony." *People v. Silva*, 987 P.2d 909, 919 (Colo. App.

7

1999).  And Colorado has chosen not to adopt a rule of evidence requiring the trial court to conduct a CRE 403 balancing test prior to admitting evidence of felony convictions when impeaching a witness.  *People v. Diaz*, 985 P.2d 83, 86 (Colo. App. 1999).  Thus, the trial court was under no obligation to weigh the prejudicial nature of Scott's felony conviction for failure to register against its probative value for impeachment purposes.

¶ 17    Scott relatedly argues that he had a prior conviction for motor vehicle theft that the prosecution could have used to impeach him without incurring any undue prejudice.  We reject this argument as well because the prosecution was under no obligation to do so, and the trial court lacked discretion to force it to do so.  *Silva*, 987 P.2d at 919; *Diaz*, 985 P.2d at 86.

### 3.    Trial Court Could Not Sanitize the Nature of Scott's Prior Felony Conviction

¶ 18    Finally, Scott argues that the trial court "misapprehended the law regarding its discretion to sanitize the nature of the prior felony conviction."  We disagree.  "When a defendant testifies, the trial court may not foreclose the use of the name, nature, and date of his prior felony convictions for impeachment purposes."  *People v.*

*Hardy*, 677 P.2d 429, 431 (Colo. App. 1983). The trial court was not at liberty to sanitize Scott's prior conviction per defense counsel's request.

## III.    Prosecutorial Misconduct

¶ 19    Scott next argues that he was deprived of a fair and impartial jury based on several instances of prosecutorial misconduct and that the cumulative effects of these errors prejudiced him. We disagree.

### A.    Standard of Review and Applicable Law

¶ 20    In analyzing a prosecutorial misconduct claim, the reviewing court must determine (1) whether the prosecutor's questionable conduct was improper based on the totality of the circumstances, and (2) whether such actions warrant reversal according to the proper standard of review. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). A prosecutor has wide latitude to make arguments based on facts in evidence and reasonable inferences drawn from those facts. *People v. Maloy*, 2020 COA 71, ¶ 61. "Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." *Domingo-Gomez v.*

*People*, 125 P.3d 1043, 1053 (Colo. 2005) (quoting *People v. Avila*, 944 P.2d 673, 676 (Colo. App. 1997)).

¶ 21    When a defendant did not contemporaneously object to the statements being challenged on appeal, we will reverse only if the error was plain. *Wend*, 235 P.3d at 1097. A plain error is one that is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 18. "We have recognized plain error as those errors that 'so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'" *Id.* (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987)).

¶ 22    "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice[d]" the defendant's substantial rights. *Howard-Walker v. People*, 2019 CO 69, ¶ 25.

### B.    Analysis

#### 1.    Veracity and Victim Status

¶ 23    Scott argues that the prosecution improperly asked him to comment on A.A.'s veracity.

¶ 24    During cross-examination, the prosecutor asked Scott whether A.A. "was sexually advancing on [him]?" Scott answered

10

affirmatively. When asked whether that "was . . . a wanted sexual advance," he answered "no." The prosecutor then summarized this exchange by stating, "[s]o in reality, you're the victim[?]" The trial court overruled defense counsel's objection to the question and Scott responded "yes." During closing arguments, the prosecutor referred to this exchange, stating that "while there is absolutely no right way to be a victim, there is a wrong way, and that is what [Scott] did moments ago when he took the stand . . . after he had sexually assaulted that woman, and pretended that he was the victim."

¶ 25 Relying on *Liggett v. People*, 135 P.3d 725 (Colo. 2006), Scott argues that "prosecutors cannot ask a defendant or witness to comment on the veracity of another witness." Though Scott accurately states the law, he inaccurately characterizes the prosecutor's actions. The prosecutor merely asked Scott about his theory of defense. At no point was Scott asked to opine on A.A.'s veracity.

¶ 26 Defense counsel also argues that the prosecutor insinuated that Scott lied when testifying and expressed the prosecutor's personal opinion about his credibility. Again, we disagree.

11

¶ 27    By testifying, Scott made his credibility a "proper subject[] for the jury to consider." *People v. Walters*, 148 P.3d 331, 335 (Colo. App. 2006).  True, it is improper for a prosecutor to express their personal opinion about the credibility of a defendant.  *Id.*  But "counsel may point to circumstances casting doubt on a witness's testimony and may draw reasonable inferences from the evidence regarding the credibility of witnesses." *People v. Dunlap*, 124 P.3d 780, 809-10 (Colo. App. 2004).  That is what the prosecutor did, while at the same time explicitly reminding the jury that the prosecutor's arguments were not evidence.  The prosecutor went through the evidence step by step, pointing out the illogic of and inconsistencies in Scott's description of the events.  We thus discern no error in the prosecutor's argument.[1]

---

[1] Even if we were to assume the prosecutor's comment that Scott was "pretend[ing] to be a victim" was an expression of personal opinion that amounted to prosecutorial misconduct, we would not be able to say that this unobjected to comment constituted plain error.  This was a brief and isolated comment made at the beginning of the prosecutor's closing argument.  *See People v. Rhea*, 2014 COA 60, ¶ 71.  And "we discern no substantial likelihood that the comment affected the verdict or deprived defendant of a fair trial." *Id.* (citation modified).

12

## 2. Prosecutor's Burden of Proof

¶ 28     Scott also contends that the prosecutor lowered her burden of proof when she implied that, to acquit Scott, the jury would have to believe A.A. concocted her entire story. We discern no error.

¶ 29     During closing arguments, the prosecutor walked through Scott's portrayal of events. In doing so, she explained that his story "made absolutely no sense," as Scott claimed that A.A. "was sober, but she got out of the car, climbed on top of him and just immediately stripped off her clothes." The prosecutor explained that Scott's version had A.A. "concoct[ing] this story to get him in trouble. She went to a SANE exam. She had a speculum inserted into [her] vagina. She had antibiotics she was forced to take. . . . It doesn't make sense because it's not what happened."

¶ 30     A prosecutor cannot argue that the jury must find a witness lied to acquit the defendant. *People v. Cuellar*, 2023 COA 20, ¶ 67. Scott argues the prosecutor did as much, and in turn lowered her burden of proof, when she implied that "the jury must find A.A. 'concocted this story' to acquit Mr. Scott." But Scott misapprehends the case law.

¶ 31     While it is not appropriate to imply "that the fact-finder must determine one or more of the witnesses is lying," the prosecutor may "juxtapose conflicting accounts of the facts and ask the fact-finder to resolve the dispute." *Liggett*, 135 P.3d at 732. Here, the prosecutor's statements did nothing more than highlight the inconsistencies within Scott's recollection of the evening. She did not at any point tell the jury that they must find that A.A. was lying in order to acquit Scott. *See People v. Collins*, 250 P.3d 668, 678 (Colo. App. 2010).

### 3.     Denigration of Defense Counsel Theory

¶ 32     Next, Scott contends that the prosecutor improperly denigrated defense counsel's theory of the case when she characterized it as "ridiculous" and "not reasonable." Again, we disagree.

¶ 33     A prosecutor commits professional misconduct if they make remarks clearly intentioned to denigrate defense counsel's arguments. *Cuellar*, ¶ 71. But prosecutors also have "wide latitude to respond to defense counsel's argument[s]." *Id.*

¶ 34     During closing arguments, the prosecutor described as "ridiculous" defense counsel's theory that "[Scott's] DNA [was] all

over [A.A.'s] body" because she was "naked and on top of him, grinding." In the same train of thought, the prosecutor stated that defense counsel's answer to how this occurred — via "transfer" — was "not reasonable" because it would be "unreasonable to think that women are walking around in the world putting objects inside their vagina to transfer."

¶ 35 The prosecutor's characterization of this argument was grounded in the expert witness's testimony, who explained that for "DNA [to] transfer from somebody else . . . to inside of another person's vagina," that "something has to transfer the DNA to an internal body swab," and that a transfer of that nature "doesn't happen just through kind of casual contact or just background DNA." In sum, the prosecutor was arguing that something with Scott's DNA on it had to enter A.A.'s vagina for Scott's DNA to have been found inside of her vagina as shown in the SANE exam, and the most reasonable explanation for that transfer was penetrative sex. Thus, it was a fair comment on the evidence.

¶ 36 Moreover, the prosecutor was responding to defense counsel's argument. Scott's primary defense was that he did not engage in any sexual activity with A.A., and he explicitly denied engaging in

any penetrative sexual activity.  This portion of the prosecutor's closing argument focused on Scott's denial.  She then countered it by asking the jury to consider the expert's testimony, which suggested that Scott's version of how his DNA came to be found inside A.A.'s vagina was not consistent with known science.  *See Collins*, 250 P.3d at 678 (holding that prosecutor's remark was a response to defense counsel's assertions, as opposed to a personal attack on defense).

## C.    Cumulative Error

¶ 37    Finally, Scott argues that the cumulative effect of these purported errors prejudiced the jury in such a way as to require reversal of Scott's conviction.  We have identified only one argument that was, at most, *arguably* improper — namely, the prosecutor's comment that Scott "pretended that he was the victim."  Even if this single instance rose to the level of misconduct, a single error cannot support reversal based on cumulative error.  *Howard-Walker*, ¶ 25.

## IV.    Disposition

¶ 38    The judgment is affirmed.

JUDGE LUM and JUDGE MOULTRIE concur.