The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 11, 2021

## 2021COA12

**No. 17CA1396, *People v. Roberts-Bicking* — Criminal Law —
Juries — Unanimity — Jury Instructions — Defense of Person;
Affirmative Defenses — Self-Defense; Constitutional Law — Due
Process**

A division of the court of appeals holds that a jury need not

unanimously agree on which exception to self-defense —

provocation or initial aggressor — has been proven by the

prosecution, disagreeing with another division's holding in *People v.*

*Mosely*, 2019 COA 143 (*cert. granted* Mar. 30, 2020).

COLORADO COURT OF APPEALS                                    **2021COA12**

---

Court of Appeals No. 17CA1396
Arapahoe County District Court No. 15CR1562
Honorable F. Stephen Collins, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Philo Roberts-Bicking,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE TOW
Dailey and Berger, JJ., concur

Announced February 11, 2021

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lynn Noesner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Philo Roberts-Bicking, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted second degree murder, first degree assault, and menacing.  To resolve his appeal, we must determine whether the trial court, when instructing the jury regarding Roberts-Bicking's claim of self-defense, was required to specifically instruct them on principles regarding multiple assailants or apparent necessity.  We must also address whether a jury must unanimously agree on which exception to self-defense the prosecution has proven.

¶ 2     We conclude that the instructions here sufficiently informed the jury regarding all applicable principles of self-defense — and only those principles applicable to this case — including the jury's obligation to consider the totality of the circumstances.  We further conclude, disagreeing with another division of this court in *People v. Mosely*, 2019 COA 143, ¶¶ 19-21 (*cert. granted* Mar. 30, 2020), that a jury need not unanimously agree on which self-defense exception the prosecution proved.  Accordingly, we affirm the judgment.

## I. Background

¶ 3     During an altercation, Roberts-Bicking shot Ricardo Thurmond[1] six times with a pistol, injuring him, and hit Ricardo's brother, Terry, over the head with the pistol. The prosecution charged Roberts-Bicking with attempted first degree murder and first degree assault as to Ricardo and menacing as to Terry. The issue at trial was whether Roberts-Bicking acted in self-defense.

¶ 4     According to the prosecution's evidence, Terry agreed to let Roberts-Bicking become his roommate. In May 2015, the two disagreed over (1) rental payments Terry felt were owed him and (2) Roberts-Bicking keeping a gun in his bedroom area[2] against Terry's wishes. Terry gave Roberts-Bicking a month to move out.

¶ 5     In June 2015, Terry reiterated his demand that Roberts-Bicking vacate the premises and told Roberts-Bicking to leave the key on the table. On the night before the incident at issue, Terry sent text messages reiterating that Roberts-Bicking

---

[1] Because Ricardo Thurmond and Terry Thurmond are brothers, we use their first names.
[2] Roberts-Bicking converted a living room in the one-bedroom apartment into his bedroom area by putting his bed, some furniture, and his belongings there. There was no door to separate his bedroom area from the rest of the apartment.

needed to leave the apartment. Roberts-Bicking did not respond to those messages.

¶ 6   On the morning of the shooting, at approximately 5:30 a.m., Terry entered Roberts-Bicking's bedroom area, demanding the key to the apartment. Roberts-Bicking refused, saying, "You're going to have to call the police to get this key." Ricardo, having heard Roberts-Bicking and Terry talking, entered Roberts-Bicking's bedroom area and also demanded the key.

¶ 7   What happened next was disputed at trial.

¶ 8   According to Terry and Ricardo, neither of the brothers threatened Roberts-Bicking, had any objects in their hands, or raised their voices. After hearing Terry and Roberts-Bicking talking, Ricardo joined Terry, tapped a piece of wood near the foot of the bed, and said, "He wants you out, it's his house." Roberts-Bicking then "rose up out of the bed, show[ed] a pistol, and said, 'You motherfuckers will die,' and started firing." Roberts-Bicking shot Ricardo six times. Roberts-Bicking then beat Terry in his head with the pistol and choked him, while using a racial epithet and saying, "You . . . fucked with the wrong guy," and "you will die." Terry threw Roberts-Bicking off him and fled the apartment.

¶ 9     Roberts-Bicking did not testify at trial. He had, however, given the police a statement that was later admitted into evidence at trial. In that statement, Roberts-Bicking said that both of the Thurmond brothers had previously threatened to physically harm him.[3] On that morning, Terry entered his bedroom area, looking for the key on the dresser and knocking his belongings to the floor. Terry had an object in his hand.[4] Ricardo had then entered the room, saying, "We aren't fucking around," grabbed his feet through the blanket, and pulled the blanket off him. Roberts-Bicking "had no idea" what the brothers were going to do; he knew the brothers were "attacking him," though they had not "put physical hands on him." He pulled out his pistol, pointed it at Ricardo, and said, "You want to fuck with me, try it." When the brothers "moved towards" him, he

---

[3] According to Roberts-Bicking, Terry had "told [him] once he would slap [him]" if he didn't give Terry the house key, and another time Terry threatened him "somehow," "that he wanted to beat up [Roberts-Bicking] or something like that." Further, around 3 a.m. the morning of the incident, Ricardo had threatened him, saying that "he wanted to fight [Roberts-Bicking] outside." (In this latter instance, Roberts-Bicking told Ricardo to "fuck off, because he was drunk.")

[4] Roberts-Bicking stated that at the time he saw the object he did not know "what [Terry] had in his hand," but that there was "a knife on the ground" after the incident.

"opened fire" on Ricardo. After emptying his pistol and "[not knowing] what to do," Roberts-Bicking "start[ed] punching [Terry] . . . in the face as hard as [he] could" with the pistol until Terry got free and ran off.

¶ 10 The jury acquitted Roberts-Bicking of attempted first degree murder but convicted him of attempted second degree murder and first degree assault (as to Ricardo) and menacing (as to Terry).

¶ 11 Roberts-Bicking now appeals. On appeal, he contends that reversal is required because of four instructional errors related to his defense of self-defense. Specifically, Roberts-Bicking argues that the trial court erred by (1) failing to give an instruction regarding multiple assailants and apparent necessity; (2) giving an initial aggressor instruction; (3) giving a provocation instruction; and (4) failing to instruct the jury that if it rejected self-defense on the basis of a self-defense exception, it could only rely on one exception and thus must unanimously agree either that Roberts-Bicking was the initial aggressor or that he provoked the brothers into attacking him. We address, and reject, each contention in turn.

## II. The Lack of a Multiple Assailants or Apparent Necessity Instruction

¶ 12    Roberts-Bicking contends that the trial court reversibly erred in rejecting proposed self-defense instructions on apparent necessity and defense against multiple assailants. We disagree.

### A.    Additional Facts

¶ 13    During the jury instruction conference, defense counsel requested, but the trial court did not give, the following "multiple assailants" instruction:

> [I]n determining the reasonableness of Mr. Roberts-Bicking's beliefs and actions, you must consider the totality of the circumstances, which includes the number of people who reasonably appeared to be threatening Mr. Roberts-Bicking.

¶ 14    Defense counsel also requested, but the trial court did not give, the following "apparent necessity" instruction:

> A person is allowed to act on the appearance of a threat, so long as it is reasonable, even if he turns out to be wrong about the threat.
>
> When a person has reasonable grounds for believing, and does actually believe, that danger of bodily injury is imminent, he may act on such appearances and defend himself. A person may act on such appearances, although the appearances turn out to be false, or although he may have been mistaken as to the extent of the actual danger.

6

> Apparent necessity, if well-grounded and of such a character as to appeal to a reasonable person under similar conditions and circumstances, as being sufficient to require action, justifies the application of self-defense to the same extent as actual or real danger.

¶ 15    Instead, consistent with the model jury instructions, *see* COLJI-Crim. H:11 (2019), and section 18-1-704, C.R.S. 2020, the court instructed as follows:

> Mr. Roberts-Bicking was legally authorized to use physical force upon another person without first retreating if:
>
> 1. he used that physical force in order to defend himself or a third person from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person, and
>
> 2. he used a degree of force which he reasonably believed to be necessary for that purpose, and
>
> 3. he did not, with intent to cause bodily injury or death to another person, provoke the use of unlawful physical force by that other person.
>
> 4. he was not the initial aggressor, or, if he was the initial aggressor, he had withdrawn from the encounter and effectively communicated to the other person his intent to do so, and the other person nevertheless continued or threatened the use of unlawful physical force.

The prosecution has the burden to prove, beyond a reasonable doubt, that Mr. Roberts-Bicking's conduct was not legally authorized by this defense. In order to meet this burden of proof, the prosecution must disprove, beyond a reasonable doubt, at least one of the above numbered conditions.

¶ 16     During deliberations, the jury submitted a question regarding the meaning of the phrase "he reasonably believed" as used in the instructions: "[I]s it what he believed to be reasonable or what we believe to be reasonable — more info please." Roberts-Bicking's counsel reiterated the request for the previously tendered multiple assailant and apparent necessity instructions. Instead, the court responded,

> Ladies and Gentleman of the jury[,] in determining the reasonableness of Mr. Roberts-Bicking's beliefs and actions, you are instructed that you are to apply an objective standard based on what a reasonable person in Mr. Roberts-Bicking's situation would have believed or done under those circumstances. In making this determination, you are to consider the totality of the circumstances shown by the evidence.

### B.    Standard of Review and Applicable Law

¶ 17     The trial court has a duty to instruct the jury correctly on all matters of law. *People v. Knapp*, 2020 COA 107, ¶ 20. We review

8

jury instructions de novo to determine if they correctly informed the jury of the applicable law. *People v. Luna*, 2020 COA 123M, ¶ 8. However, if the jury was adequately instructed on the law, we review for abuse of discretion a trial court's decision whether to give a particular instruction and we "will not disturb the ruling unless it is manifestly arbitrary, unreasonable, or unfair." *People v. Trujillo*, 2018 COA 12, ¶ 11.

¶ 18 A person is justified in using a degree of physical force he reasonably believes necessary upon another to defend himself from what he "reasonably believes to be the use or imminent use of unlawful physical force" against him by that other person, "and he may use a degree of force which he reasonably believes to be necessary for that purpose." § 18-1-704(1), C.R.S. 2020.

¶ 19 In *People v. Jones*, 675 P.2d 9, 14 (Colo. 1984), the supreme court determined that the trier of fact must consider "the number of persons reasonably appearing to be threatening the accused" when "evaluating the reasonableness of the accused's belief in the necessity of defensive action and the reasonableness of force used by him to repel the apparent danger." In that case, because a jury

instruction on multiple assailants — though inartfully drafted — was rejected by the district court, a new trial was required. *Id.*

¶ 20 After *Jones,* divisions of this court observed that "[i]n situations involving multiple participants, the instruction must direct the trier of fact to consider the 'totality of the circumstances, including the number of persons reasonably appearing to be threatening the accused.'" *People v. Manzanares,* 942 P.2d 1235, 1240 (Colo. App. 1996) (quoting *Jones,* 675 P.2d at 14); *see People v. Cuevas,* 740 P.2d 25, 27 (Colo. App. 1987) (principle recognized); *People v. Auldridge,* 724 P.2d 87, 88 (Colo. App. 1986) (same); *see also People v. Beasley,* 778 P.2d 304, 307 (Colo. App. 1989) (If there are multiple participants in a fight, "the instruction must necessarily refer to the use of unlawful force by any of the defendant's opponents.").

¶ 21 In *Riley v. People,* 266 P.3d 1089, 1094 (Colo. 2011), however, the supreme court clarified "that *Jones* does not require a trial court to give a specific multiple assailants instruction in *every* case involving both multiple assailants and self-defense." Rather, the court held that "so long as the given instructions properly direct the jury to consider the totality of the circumstances during its

deliberations on reasonableness, those instructions will satisfy *Jones.*" *Id.*

¶ 22 There, the supreme court noted that the jury was instructed in the language of the self-defense statute and also received an instruction that "[a]pparent necessity, if well-grounded and of such character as to appeal to a *reasonable person under similar conditions and circumstances,* as being sufficient to require action, justifies the application of self-defense to the same extent as actual or real danger." *Id.* at 1091. The court held that the "broad language — 'reasonable person under similar conditions and circumstances' — accurately informed the jury that it should consider the 'totality of the circumstances, including the number of persons reasonably appearing to be threatening the accused' and thus satisfied the *Jones* requirement." *Id.* at 1095.

¶ 23 We do not read *Riley* to require a trial court to specifically provide either a multiple assailant instruction or an apparent necessity instruction. Indeed, our supreme court explicitly rejected a similarly narrow interpretation of *Jones* itself, stating that "interpreting [*Jones*] in that fashion would inappropriately infringe on the discretion trial courts have to tailor jury instructions to fit

11

each unique case." *Id.* at 1094. Further, the supreme court has unequivocally stated that an instruction that tracks the statutory language — particularly the language focusing on what the defendant "reasonably believed" — sufficiently encompasses the concept of apparent necessity instruction, and thus an additional instruction on that concept is no longer necessary. *Beckett v. People*, 800 P.2d 74, 77-78 (Colo. 1990).

¶ 24 Moreover, when analyzing whether the supplemental instruction given in *Riley* was sufficient, the supreme court did not emphasize the phrase "[a]pparent necessity" but rather focused on the phrase "reasonable person under similar conditions and circumstances." *Riley*, 266 P.3d at 1095. This language, the court held, is what made the instructions as a whole sufficient.

¶ 25 We further acknowledge that the supreme court in *Riley* appears to have left open the possibility that, in light of *Beckett*, a stock jury instruction on self-defense alone would be sufficient to satisfy *Jones*. *Id.* at 1095 n.6. However, absent a more explicit proclamation that *Beckett* altered the holding of *Jones*, we assume that *Jones* — as explicitly modified by *Riley* — remains good law to

12

the extent it requires an explicit instruction that the jury must consider the totality of the circumstances.

C.    Analysis

¶ 26    Here, the trial court rejected Roberts-Bicking's instructions on both apparent necessity and multiple assailants. However, as we read *Riley*, the stock instruction alone fails to adequately instruct the jury to consider the totality of the circumstances in a multiple assailant scenario. *Id.* at 1093. Thus, we agree that it was necessary in this case to give some instruction beyond the stock jury instruction.

¶ 27    However, while the initial instructions may have been inadequate in this regard, the supplemental instruction provided in response to the jury's question cured any deficiency. The trial court instructed the jury that it must consider "what *a reasonable person in Mr. Roberts-Bicking's situation would have believed or done under those circumstances.* In making this determination, you are to consider *the totality of the circumstances shown by the evidence.*" (Emphasis added.) This instruction is in all material respects identical to the instruction given, and approved of, in *Riley*.

13

¶ 28    In sum, the supreme court has held that a specific apparent necessity instruction is never required, *Beckett*, 800 P.2d at 77-78, though such an instruction may be sufficient to supplement the stock instruction in a multiple assailant case, *Riley*, 266 P.3d at 1095.  All that is required is that the jury be instructed to consider the reasonableness of the defendant's beliefs and actions under the totality of the circumstances.  *Id.* at 1094.  Here, we conclude that the supplemental jury instruction adequately informed the jury that it must do precisely that.  Accordingly, the trial court did not, under the circumstances of this case, err by declining to give either a multiple assailant instruction or an apparent necessity instruction.

III.    The Initial Aggressor and Provocation Instructions

¶ 29    Roberts-Bicking next contends that the trial court should have given neither an instruction on initial aggressor nor one on provocation.  He further argues that, to the extent giving both instructions was not error, the trial court should have instructed the jury that the two exceptions were mutually exclusive of one another, and that the jury thus needed to unanimously agree which of the two, if either, was applicable.  Again, we disagree with each contention.

## A. The Evidence Warranted Instructing the Jury on the Initial Aggressor and Provocation Exceptions to Self-Defense

### 1. Standard of Review and Applicable Law

¶ 30    "One way for the prosecution to defeat a claim of self-defense is to prove beyond a reasonable doubt that an exception to self-defense applies." *Castillo v. People*, 2018 CO 62, ¶ 40. Two such exceptions are initial aggressor and provocation. *Id.* at ¶¶ 3, 29.

¶ 31    A trial court may instruct the jury on an exception to an asserted affirmative defense if "some evidence" supports the exception. *See Galvan v. People*, 2020 CO 82, ¶ 25 (provocation exception). To qualify as "some evidence," the evidence must be such as would support a reasonable inference that the accused was the initial aggressor or provoked the other person into attacking (or appearing to attack) him. *See People v. Griffin*, 224 P.3d 292, 300 (Colo. App. 2009) (initial aggressor exception).

¶ 32    In determining whether the trial court erred in instructing a jury on the exceptions to self-defense, we review de novo whether sufficient evidence exists to support the challenged instructions.

*Castillo*, ¶ 32.  We view the evidence in the light most favorable to the giving of the challenged instruction.  *Galvan*, ¶ 33.

> 2.  The Evidence Warranted Instructing the Jury on the Initial Aggressor and Provocation Exceptions to Self-Defense

> a.  The Initial Aggressor Exception

¶ 33    An initial aggressor instruction is warranted when the evidence suggests the defendant initiated the physical conflict by using or threatening imminent use of unlawful physical force.  *Castillo*, ¶¶ 43, 50-51.

¶ 34    Here, viewing the evidence in the light most favorable to giving the initial aggressor instruction, we conclude that the record contains some evidence to support it.  Though Roberts-Bicking asserts that it was the Thurmond brothers who acted as initial aggressors because they came into his bedroom area and one of them grabbed his feet and touched his blanket, we agree with the People that the record admits of a contrary conclusion.  The Thurmond brothers, after all, testified that (1) they went into the small bedroom to get Roberts-Bicking to give up his key to the apartment; and (2) they did not threaten Roberts-Bicking.

Nonetheless, Roberts-Bicking sat up in his bed, brandished a pistol, and said, "you motherfuckers will die."

¶ 35    The Thurmond brothers' testimony provided ample grounds to support the conclusion that it was Roberts-Bicking who initiated the physical conflict by using or threatening the imminent use of unlawful physical force. *See Griffin*, 224 P.3d at 300 ("utter[ing] insults" is not sufficient for an initial aggressor instruction, but "evidence of [his] other actions," such as producing a gun, is). Accordingly, we conclude the trial court did not err in instructing the jury on the initial aggressor exception to self-defense.

¶ 36    In so concluding, we reject Roberts-Bicking's argument that the initial aggressor instruction was inappropriate because "the act giving rise to the charged offense cannot serve as evidence that the defendant was the initial aggressor," citing *Manzanares*, 942 P.2d at 1241.[5]   Even accepting this proposition as true, it does not resolve

---

[5] In this regard, in *People v. Manzanares*, 942 P.2d 1235, 1241 (Colo. App. 1996), the division wrote:

> [T]he only issue remaining upon defendant's return to the party was whether, by firing his pistol, he committed any of the crimes charged

the issue: the "act" upon which the instruction was based need not have been, as he asserts, the *firing* of the pistol; merely *producing* the pistol during an argument was sufficient to warrant instructing the jury on initial aggressor principles. *See Griffin*, 224 P.3d at 300.

### b. The Provocation Exception

¶ 37 A provocation instruction is authorized when

> (1) the other person uses unlawful physical force against [the defendant]; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended his provocation to goad the other person into attacking him [or her] in order to provide a pretext to injure or kill that person.

*Galvan*, ¶ 19 (citing *People v. Silva*, 987 P.2d 909, 914 (Colo. App. 1999)).

¶ 38 Here, the prosecution said that

> the evidence of provocation is from [Roberts-Bicking's] own words. He claims in his interview that the victims made an initial

---

> and, if so, whether the conduct was justified because he had acted in self-defense.
>
> A finding by the jury that he was at that point the "initial aggressor" would be no more than a rejection of the claim of self-defense. Thus, the instruction was not appropriate in these circumstances.

18

attack on him or that they confronted him, but then that when they were at the foot of his bed, he claims that he then pulled the handgun. That he sat up and pointed it directly at Ricardo Thurmond and he said, and these are close to quotes, I believe, "If you want to fuck with me, try it."

¶ 39     The trial court agreed, saying

> "If you want to fuck with me, try it," could be interpreted as a warning. Could be interpreted as an invitation. I think that does fall within provocation, so I think it is a somewhat close call. But . . . there is evidence, depending on how the jury views the overall evidence, that would suggest that the reason this escalated to a shooting was because [Roberts-Bicking] escalated it and provoked them by inviting them to attack him, which then allowed him to shoot them.

¶ 40     The trial court correctly decided this issue. What Roberts-Bicking meant and intended by his statement is open to different, but nevertheless reasonable, interpretations — one of which would support instructing the jury on the provocation exception to self-defense. "The jury . . . must perform the fact-finding function when conflicting evidence — and conflicting reasonable inferences — are presented." *People v. Perez*, 2016 CO 12, ¶ 31. By instructing the jury on provocation, the trial court

19

appropriately provided the jury with a necessary legal principle to permit it to perform that function.

### B. The Exceptions Are Not Mutually Exclusive of One Another and Unanimity Is Not Required

¶ 41    Finally, we reject Roberts-Bicking's assertion that the trial court must instruct the jury that the exceptions are mutually exclusive of one another and that the jury cannot apply a particular exception unless it unanimously agrees that that particular exception has been proven beyond a reasonable doubt.[6]

¶ 42    In *People v. Mosely*, a division of this court held that, in some circumstances, a court must instruct the jury that it has to unanimously agree which of the two exceptions to self-defense apply. *Mosely*, ¶¶ 19-21. But a more recent opinion from our

---

[6] The instruction Roberts-Bicking requested, and the trial court refused, said,

> You are instructed that you may find that neither [exception] applies. If however, you find that one of these numbered [exceptions] applies, you must unanimously agree which one has been disproven [sic] beyond a reasonable doubt. A person cannot be both the initial aggressor and the provoking party.

supreme court has cast doubt on the foundational premise of the *Mosely* division's analysis.

¶ 43    In *Mosely*, the division was, at least in part, concerned with the possibility that a jury could, by concluding that both exceptions applied, find a defendant guilty on legally and logically inconsistent grounds. *Id.* at ¶ 23 ("Our conclusion is supported by case law in a related context that while factually inconsistent verdicts are permissible, when a defendant is convicted of two or more crimes with legally and logically inconsistent elements, the verdicts should not be sustained."). The division's concern was premised on an understanding that the initial aggressor and provocation exceptions were mutually exclusive of one another:

> [A] defendant's assertion of self-defense is lost if he or she acted with intent to provoke the victim into attacking first in order to provide the defendant with the excuse to injure or kill the [victim].
>
> . . . .
>
> *[I]n contrast to the initial aggressor limitation,* the provocation limitation applies in situations where the defendant was not the initial aggressor.

*Id.* at ¶ 17 (quoting *Silva*, 987 P.2d at 914).

¶ 44    But *Galvan* appears to have changed that.  In *Galvan,* the supreme court held that

> a defendant forfeits self-defense as an affirmative defense to legally justify his use of physical force upon another person if: (1) the other person uses unlawful physical force against him; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended his provocation to goad the other person into attacking him in order to provide a pretext to injure or kill that person.

*Galvan,* ¶ 19.  In an accompanying footnote, the court said:

> The division in *Silva* surmised that, under the provocation exception, "the victim [must] make[ ] an *initial* attack on the defendant." 987 P.2d at 914 (emphasis added).  But section 18-1-704(3)(a)[, C.R.S. 2020,] does not limit the exception to a situation in which the victim attacks first.  Nor have we ever engrafted such a restriction onto the exception.

*Id.* at ¶ 19 n.4.

¶ 45    In other words, an initial act of aggression (say, a threat of unlawful force) can be sufficient to establish both that the actor is the initial aggressor and — if that act of aggression is undertaken with the intent to provoke the other person to attack so the actor may injure or kill the other person — that the actor provoked the

other person. Because the components of the initial aggressor and provocation exceptions are no longer necessarily incompatible, an instruction saying that at most only one of the two exceptions could apply is inaccurate and a jury's acceptance of both exceptions would not lead to an impermissible legally and logically inconsistent guilty verdict.

¶ 46 Otherwise, it is true that, when properly raised, the affirmative defense of self-defense is, under our law, treated as an additional element of the crime. *See People v. Pickering*, 276 P.3d 553, 555 (Colo. 2011) ("[I]f presented evidence raises the issue of an affirmative defense, the affirmative defense effectively becomes an additional element."). But while a "jury must unanimously agree on all elements of a crime, the jury is not required to unanimously agree on the evidence or theory by which a particular element is established." *People v. Palmer*, 87 P.3d 137, 140 (Colo. App. 2003); *see People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010) ("Generally, jurors need not agree about the evidence or theory by which a particular element is established . . . ."); *People v. Rivas*, 77 P.3d 882, 887 (Colo. App. 2003) (jurors not required to unanimously agree on theory of culpability, only that the elements of the charge

have been satisfied according to a theory of culpability); *People v. Hall*, 60 P.3d 728, 733 (Colo. App. 2002) (jury need not unanimously determine whether defendant committed crime as principal or complicitor).

¶ 47      Consequently, although a jury must unanimously find that the government has proved each element of an offense, jury unanimity is not required with respect to alternate means or ways of satisfying an element of an offense. *State v. Epps*, 949 N.W.2d 474, 481 (Minn. Ct. App. 2020) (citing *State v. Ihle*, 640 N.W.2d 910, 918 (Minn. 2002)); *see also, e.g., Schad v. Arizona*, 501 U.S. 624, 630-45 (1991) (plurality opinion) (holding unanimity was not required as to alternative, equally culpable, mental states where a single crime was charged: "We see no reason, however, why the rule that the jury need not agree as to mere means of satisfying the *actus reus* element of an offense should not apply equally to alternative means of satisfying the element of *mens rea*"); *People v. Archuleta*, 2020 CO 63M, ¶ 20 ("[A] jury need not unanimously decide 'which of several possible sets of underlying brute facts make up a particular element' or 'which of several possible means the defendant used to commit an element of the crime.'" (quoting *Richardson v. United*

*States*, 526 U.S. 813, 817 (1999))); *State v. Armengau*, 93 N.E.3d 284, 303 (Ohio Ct. App. 2017) ("[U]nanimity is not required on the *manner* in which each element is satisfied . . . ."); *Todd v. State*, 262 P.3d 1222, 1224 (Utah Ct. App. 2011) (A "jury need not unanimously agree on which of three possible formulations of the necessary mens rea had been proved as long as all jurors agreed that at least one of the three had been proved.") (citation omitted); *State v. Armstrong*, 394 P.3d 373, 379 (Wash. 2017) ("When one element of the crime can be satisfied by alternative means, jury unanimity is satisfied if the jury unanimously agrees the State proved that element beyond a reasonable doubt . . . .").

¶ 48     Consistent with these authorities, the Court of Appeals in Texas has held that "the jury is not required to agree unanimously on the specific component of self-defense on which it is not persuaded." *Harrod v. State*, 203 S.W.3d 622, 628 (Tex. App. 2006).

¶ 49     The division in *Mosely* distinguished the *Harrod* case because "Texas treats self-defense as a justification, not an affirmative defense," and, thus, is more like a "traverse." *Mosely*, ¶¶ 24-25. We fail, however, to see how the affirmative defense/traverse dichotomy makes any difference, given that

25

- In Colorado, as in Texas, self-defense is a defense of "justification." *See* § 18-1-704(1) ("[A] person is *justified* in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for that purpose.") (emphasis added); § 18-1-710, C.R.S. 2020 ("The issues of justification or exemption from criminal liability under sections 18-1-701 to 18-1-709 are affirmative defenses."); *Galvan*, ¶ 19 (describing self-defense "as an affirmative defense to legally justify his use of physical force upon another person").

- In Texas, as in Colorado, once the issue of self-defense is raised, the prosecution has the burden of proving beyond a reasonable doubt that the defendant was not acting in self-defense. *See, e.g., McFadden v. State*, 541 S.W.3d 277, 284 (Tex. App. 2018) (The State must "persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense."); *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.

2011) (noting that "the State bears the burden of persuasion to disprove" a claim of self-defense "by establishing its case beyond a reasonable doubt"); *Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1979) ("[W]hen the charge is viewed as a whole, it placed the burden on the State to show beyond a reasonable doubt that appellant was not acting in self-defense.").

¶ 50    In our view, and particularly in light of the supreme court's subsequent decision in *Galvan*, the division in *Mosely* drew a distinction without a difference.  We therefore decline to follow that case.  *See People v. Smoots*, 2013 COA 152, ¶ 21 (citing *People v. Thomas*, 195 P.3d 1162, 1164 (Colo. App. 2008)), *aff'd sub nom. Reyna-Abarca v. People*, 2017 CO 15.  Instead, we conclude that the exceptions are not mutually exclusive and that unanimity is not required.  Thus, the trial court did not err by declining to provide the special unanimity instruction requested here.

## IV.    Disposition

¶ 51    The judgment of conviction is affirmed.

JUDGE DAILEY and JUDGE BERGER concur.