21CA1544 Peo v Clark 09-05-2024 COLORADO COURT OF APPEALS Court of Appeals No. 21CA1544 Arapahoe County District Court No. 17CR3639 Honorable Andrew C. Baum, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Billy Darnell Clark, Jr., Defendant-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE GRAHAM* Johnson and Hawthorne*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced September 5, 2024 Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024. 
 1 ¶ 1 Defendant, Billy Darnell Clark, Jr., appeals his judgment of conviction entered on jury verdicts finding him guilty of two counts of first degree assault. We affirm. I. Factual and Procedural History ¶ 2 In early December 2017, Clark and his wife, T.W., engaged in a heated argument after Clark discovered she was having an affair with D.L.
1 The argument became physical and T.W. was injured. After this initial altercation, Clark moved out of the marital home. ¶ 3 About two weeks later, Clark returned to the marital home to deliver groceries and see his children; however, after a heated phone call with T.W., Clark returned to his car and left the property. T.W. took the call in her car with the car’s speaker on, so her passengers, D.L., G.M. and K.S., were able to hear the conversation with Clark. During the call, T.W. made several threatening statements to Clark, telling Clark that she had “two [people] that will beat your ass.” ¶ 4 As Clark was driving away, T.W. saw Clark pass by. T.W. began following Clark, and both cars eventually stopped. T.W. 1 For the sake of brevity, we will refer to the victims (D.L. and G.M.) and Clark’s wife (T.W.) by their initials. 
 2 exited her car, approached Clark’s driver’s side window, and engaged in another argument while he remained in his vehicle. At the same time, both D.L. and G.M. also exited T.W.’s car and approached the rear passenger side of Clark’s vehicle. ¶ 5 At this point, the parties’ descriptions of events diverge. T.W. testified that during her conversation with Clark over the speaker phone, Clark told her that she “deserved” what she got during their previous altercation. T.W. said that this comment upset both D.L. and G.M. T.W. said that, after she began following Clark, he was driving very slowly. T.W. said that she eventually stopped and got out of her car, which caused Clark to also stop his vehicle. Before exiting her vehicle, T.W. told everyone to stay in her car while she talked to Clark. However, she said that both D.L. and G.M. left the car and stood “a little bit back” by a tree. T.W. testified that she began arguing with Clark and that she made him feel as if “he was going to get jumped” by saying “[y]ou deserve what you’re about to get.” ¶ 6 At some point Clark saw D.L. and G.M. approaching his car. T.W. testified that she saw Clark get out of the car, and that he did not have a gun with him at that time. She said that she believed 
 3 that Clark went back to the car and got the weapon. T.W. also said that she heard the gunshots, but that she did not know at the time if anyone was injured. ¶ 7 D.L. also testified at trial. D.L. said that T.W. stopped her car “three to four” car lengths behind Clark’s car. D.L. said that T.W. got out of her car, so he also got out of the car and stood near a tree “just in case.” D.L. said he then saw the door to Clark’s car “fly open,” which caused him to start running toward Clark’s car. D.L. testified that he was hit by a bullet as he neared Clark’s car and that, as he turned and ran away, he was struck by two more bullets. ¶ 8 K.S. testified that she was also in the car at the time T.W. argued with Clark over the car’s speakerphone. She said that the mood in the car was “hyper” during the call, and that D.L. and G.M. were both “hyping each other up.” K.S. recalled that they followed Clark’s car for about a block; however, K.S. believed that Clark stopped his vehicle first before T.W. stopped her car. K.S. also said that, after T.W. and Clark talked for a few minutes, Clark opened his car door, and that that is when D.L. and G.M. walked toward Clark’s car. K.S. said that, as D.L. and G.M. approached Clark’s 
 4 car, she heard shots. She also testified that, at the time the shots were fired, D.L. and G.M. were “[m]aybe a couple of arm’s length[]s away from Clark.” K.S. also stated that as G.M. was “running past the car, I seen the bullet hit him.” ¶ 9 Finally, Clark testified about the altercation. He said that during the phone call with T.W., she said that she had two friends coming to beat him up. Clark left the house to avoid a confrontation; however, T.W. saw him driving and she began to follow him. Clark said he began driving very slowly with his hazard lights on. He said that T.W. stopped her car and exited the vehicle, so he also stopped his car. He said that T.W. approached his car and they began talking. Clark then heard a “bang” as someone attempted to open the back passenger side door to his car. Clark said that he saw “shadows” around his vehicle and that people were yelling at him to “get . . . out of the car,” and that “[Clark] better have that gun.” Clark testified that the event happened fast and that he began firing his gun as soon as he got out of his car. Clark said that his first shot was a “hip fire” as he was getting out of the car and that the person near his car was still moving so he fired again. Clark said that as soon as he came up to the tailgate of his 
 5 car, he saw G.M. moving toward him, so he fired his gun again. Clark also said that both D.L. and G.M. were facing him when he shot them. ¶ 10 Both D.L. and G.M. sustained serious bodily injuries from multiple gunshot wounds. Clark was charged with two counts of attempted second degree murder and two counts of first degree assault. After a jury trial, Clark was convicted on the two counts of first degree assault, and he was sentenced to serve a fifteen-year term and a ten-year term in the custody of the Department of Corrections, set to run consecutively. II. Jury Instructions ¶ 11 Clark contends that the trial court erroneously instructed the jury. Specifically, Clark argues that the trial court failed to properly instruct the jury (1) on the concept of “multiple assailants” and (2) on the concept of “initial aggressor.” We are not persuaded. A. Standard of Review ¶ 12 A trial court has a duty to instruct the jury on all matters of law applicable to the case. Riley v. People, 266 P.3d 1089, 1092 (Colo. 2011). We review a trial court’s decision to give a particular instruction for an abuse of discretion. See People v. Ramos, 2017 
 6 COA 100, ¶ 14. “A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law.” People v. Grant, 2021 COA 53, ¶ 12 (citations omitted). But we review de novo whether the jury instructions, when considered as a whole, accurately informed the jury of the governing law. See Riley, 266 P.3d at 1092. ¶ 13 When, as here, a defendant does not preserve a contention, we review only for plain error. See Hagos v. People, 2012 CO 63, ¶ 14. An error is plain if it is obvious and substantial, such that it so undermines the trial’s fundamental fairness as to cast serious doubt on the judgment of conviction’s reliability. See id. An error is obvious when the action contravenes a clear statutory requirement, a well-settled legal principle, or Colorado case law. Scott v. People, 2017 CO 16, ¶ 16. For an error to be plain, it must have been “so clear cut and so obvious” that a trial judge should have been able to avoid the error without the benefit of an objection. People v. Conyac, 2014 COA 8M, ¶ 54. As applied to jury instructions, the defendant must “demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to his conviction.” People v. 
 7 Garcia, 28 P.3d 340, 344 (Colo. 2001) (quoting Bogdanov v. People, 941 P.2d 247, 255-56 (Colo. 1997)). Thus, a court’s failure to instruct the jury properly does not constitute plain error if the relevant instruction, read in conjunction with other instructions, adequately informed the jury of the law. Id. at 345 n.3. Moreover, an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant’s guilt. Espinoza v. People, 712 P.2d 476, 478 (Colo. 1985). B. Additional Facts ¶ 14 At the jury instructions conference, defense counsel tendered several instructions to the court, one of which related to Clark’s assertion that he acted in self-defense.
2 After reviewing the 2 We note that the transcript of the jury instructions conference contains numerous gaps where defense counsel requested the discussion occur “off the record.” Relevant here, one such gap occurs when the parties are discussing the portion of the self-
defense instruction that addresses the “initial aggressor” and “duty to retreat” concepts. As a result, facts not presented in the record cannot be reviewed, and we will presume that omitted portions of the record would support the trial court’s ruling. See People v. Duran, 2015 COA 141, ¶¶ 12-13 (“The presumption is that material portions omitted from the record would support the judgment.”). 
 8 evidence presented, the trial court found the evidence sufficient to support including the instruction. ¶ 15 Turning to the “initial aggressor” concept, the court asked Clark’s counsel if he believed that the initial aggressor language should be included in the instruction. Clark’s counsel responded, “I don’t know exactly what you’re looking at, Your Honor, but in the end I think that it’s important that there be some language with regard to [Clark] not having to retreat.” The court agreed and noted that the second paragraph of the self-defense instruction already included language instructing the jury that Clark did not have a duty to retreat. After reviewing a printed copy of the self-defense instruction that included the “initial aggressor” language, Clark’s counsel informed the court that he had no objection to it. Before closing arguments, the parties were shown the final jury instructions and Clark’s counsel again reiterated that he had no objections. ¶ 16 With regard to Jury Instruction No. 15 concerning self-
defense, the trial court instructed the jury: The evidence presented in this case has raised the affirmative defense of “defense of person,” as a defense to Assault in the First Degree 
 9 (Deadly Weapon) and Attempt to Commit Murder in the Second Degree. Mr. Clark was legally authorized to use physical force upon another person without first retreating if: (1) he used that physical force in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person, and (2) he used a degree of force which he reasonably believed to be necessary for that purpose, and, (3) he was not the initial aggressor, or, if he was the initial aggressor, he had withdrawn from the encounter and effectively communicated to the other person his intent to do so, and the other person nevertheless continued or threatened the use of unlawful physical force. ¶ 17 The instruction also informed the jury that the prosecution must disprove beyond a reasonable doubt at least one element of the self-defense instruction for the affirmative defense to not apply, and that the jury should reach its verdict “after considering all the evidence.” Clark’s counsel did not request a multiple assailants instruction at any point during the jury instructions conference. 
 10 C. Analysis 1. Waiver and Invited Error ¶ 18 At the outset, the People contend that Clark may not challenge either jury instruction because he either invited or waived any error. We disagree. ¶ 19 A waiver requires an “intentional relinquishment of a known right or privilege.” Phillips v. People, 2019 CO 72, ¶ 16 (quoting People v. Rediger, 2018 CO 32, ¶ 39). “When an intentional relinquishment of a known right is not present, then ‘the failure to make the timely assertion of a right’ is a forfeiture, not a waiver.” Cardman v. People, 2019 CO 73, ¶ 10 (quoting Phillips, ¶ 17). “Thus, while waiver requires ‘intent,’ forfeiture occurs ‘through neglect.’” Id. (citation omitted). ¶ 20 Under the doctrine of invited error, “a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts.” People v. Zapata, 779 P.2d 1307, 1309 (Colo. 1989). Invited error is a narrow doctrine that applies to errors in trial strategy but not to errors that result from oversight or neglect. Rediger, ¶ 34. Like waiver, invited error precludes review when a party acts intentionally; mere 
 11 acquiescence to an error that the party is unaware of does not show invited error. Id. at ¶¶ 34-37. Thus, without record evidence that a party affirmatively and strategically acquiesced to an erroneous ruling, invited error does not apply. People v. Garcia, 2018 COA 180, ¶ 12 (citing Rediger, ¶ 10). ¶ 21 The People assert that Clark either invited or waived any potential error because he “tendered the instructions which initiated the conversation at the jury instruction conference” and that he “actively participated in crafting the self-defense instruction ultimately given to the jury.” We disagree. ¶ 22 Relevant here, Clark did not affirmatively indicate his desire to relinquish a known right; indeed, the record is devoid of any indication that the omissions on Clark’s part were intentional. See Cardman, ¶ 11 (“The record is barren of any indication that defense counsel considered raising the unpreserved claim before the trial court but then, for strategic or any other reason, discarded the idea.”). Rather, Clark’s omission of the multiple assailants instruction is more properly characterized as a negligent oversight on defense counsel’s part. See Rediger, ¶ 39 (Courts “do not presume acquiescence in the loss of fundamental constitutional 
 12 rights, and therefore indulge every reasonable presumption against waiver.” (quoting People v. Curtis, 681 P.2d 504, 514 (Colo. 1984))); see also United States v. Staples, 202 F.3d 992, 995 (7th Cir. 2000) (“[W]aiver is accomplished by intent, [but] forfeiture comes about through neglect.”). While it is true that Clark offered a version of the jury instructions to the court and his counsel actively participated in the jury instructions conference, we can identify no evidence in the record to indicate Clark’s clear intention to waive this objection. Furthermore, there is no identifiable tactical or strategic advantage to Clark omitting a multiple assailants instruction where at least some evidence at trial supported inclusion of the instruction. Consequently, we reject the People’s argument that the doctrines of waiver and invited error apply. 2. Multiple Assailants Instruction ¶ 23 Clark contends that the trial court erred by not sua sponte instructing the jury on the concept of “multiple assailants.” For several reasons, we disagree. ¶ 24 First, we disagree with Clark’s contention that the error in this case was sufficiently open and obvious to satisfy the first element of plain error review. Typically, a district court need not “give a 
 13 specific multiple assailants instruction in every case involving both multiple assailants and self-defense.” Riley, 266 P.3d at 1094. Rather, a jury must consider the totality of the circumstances to determine whether the defendant (1) reasonably believed self-
defense was necessary and (2) used reasonable force to repel the apparent danger. Id. “The purpose of this rule is to ensure that the jury understands that it may consider all the relevant evidence when assessing the reasonableness of the defendant’s actions.” Id. ¶ 25 In this case, the court’s instruction to the jury emphasized that the jury was to “consider[] all the evidence” in determining whether Clark “reasonably believed” that another person was subjecting (or about to subject) Clark to unlawful physical force. This informed the jury that Clark was justified in using force against any person who he reasonably believed was imminently attacking him. ¶ 26 And, as noted above, Colorado courts have not deemed it necessary to require trial courts to provide a specific multiple assailants instruction in every self-defense case where multiple assailants are present. Id. Indeed, courts have reached varying outcomes in cases involving multiple assailants instructions based 
 14 on the specific circumstances of the case. See, e.g., People v. Jones, 675 P.2d 9, 13 (Colo. 1984) (concluding trial court’s denial of multiple assailants instruction improper because evidence supported its inclusion and the trial court’s self-defense instruction improperly “omitted any reference to the defendant’s right to use force in order to defend against [the actions of the] associates”); Riley, 266 P.3d at 1092, 1094 (concluding a specific multiple assailants instruction was not required where the court gave an “apparent necessity” instruction because the “given instructions properly direct[ed] the jury to consider the totality of the circumstances”); People v. Roberts-Bicking, 2021 COA 12, ¶¶ 27-28 (trial court’s error in denying defendant’s multiple assailants instruction was cured by trial court’s inclusion of supplemental instruction requiring jury to consider “the totality of the circumstances”). Taken together, these cases illustrate that a specific multiple assailants instruction is not required in every circumstance. Thus, we are hard pressed to conclude that the error was so obvious that the trial court should have interjected sua sponte where the case law on point demonstrates a variety of outcomes based on case-specific circumstances. 
 15 ¶ 27 Second, even assuming arguendo that the trial court’s failure to instruct the jury sua sponte on the concept of multiple assailants was obvious error, we still conclude that the error was not substantial because there was not a reasonable probability that the error contributed to Clark’s conviction. See People v. Miller, 113 P.3d 743, 750 (Colo. 2005). ¶ 28 In addition to the pattern jury instruction concerning self-
defense, the court instructed the jury to consider all the evidence in the case in deciding whether the defendant acted in self-defense. Specifically, the instructions given to the jury required it to consider all of the evidence presented in the case before rendering a verdict. This instruction, in combination with the other instructions concerning self-defense, adequately directed the jury to consider the totality of the circumstances, including the number of individuals allegedly assaulting Clark at the time of the altercation. See People v. Trujillo, 83 P.3d 642, 645 (Colo. 2004) (reviewing court must consider jury instructions as a whole). Thus, we discern no evidence that the jury instructions provided here improperly limited the jury to consider only the danger posed by a single assailant. 
 16 ¶ 29 We also deem it significant that defense counsel was able to argue Clark’s multiple assailants theory under the instructions provided by the court. For instance, Clark consistently testified that there were “multiple people” or “multiple shadows” moving around his car in the moments before he fired. Clark also explained that he heard multiple voices threatening him, telling him to “get . . . out of the car” and that Clark “better have that gun on [him].” And in his closing argument, Clark’s counsel again emphasized that Clark was threatened by multiple people, arguing that Clark believed he had “two people here that are going to beat [Clark] up.” Indeed, much of Clark’s closing argument centered on the fact that Clark believed that D.L. and G.M. were about to assault him. ¶ 30 Also, neither the prosecutor nor the court suggested to the jury that it could not properly take into account Clark’s evidence that he had to defend himself against multiple assailants and therefore was entitled to use a degree of force he reasonably believed necessary for that purpose. Indeed, as noted above, Clark’s argument throughout the case was that his use of force was necessary primarily because he was threatened by multiple 
 17 assailants. In other words, Clark’s primary point of contention focused on whether his use of force was reasonable in the circumstances. Thus, from our review of the record, it appears that neither party actually contested whether the jury could consider the impact of multiple assailants on Clark’s actions at trial. Espinoza, 712 P.2d at 478 (finding no plain error where the court erroneously defined “knowingly” because the mental state was not contested at trial); People v. Geyer, 942 P.2d 1297, 1301 (Colo. App. 1996) (finding the court’s instructions on “unlawful entry” did not constitute plain error because the defendant did not contest that he was not authorized to enter the unit). ¶ 31 Therefore, based on the above, we also conclude that any alleged error was not substantial because the record reveals that there is not a reasonable probability that the error contributed to Clark’s conviction. 3. Initial Aggressor Instruction ¶ 32 Clark contends that the trial court committed reversible error when it instructed the jury on the concept of “initial aggressor.” Specifically, he argues that the court erred in giving the initial aggressor instruction because there was no evidence that Clark was 
 18 the initial aggressor, and, therefore, there was no support for including this instruction. Again, we are not persuaded. ¶ 33 Where, as here, a defendant does not object to a jury instruction, we review for plain error. Garcia, 28 P.3d at 344. To be an initial aggressor, a defendant must initiate the physical conflict. People v. Beasley, 778 P.2d 304, 306 (Colo. App. 1989). “A court may give an initial aggressor instruction if the evidence will support a reasonable inference that the defendant initiated the physical conflict by using or threatening the imminent use of unlawful physical force.” People v. Griffin, 224 P.3d 292, 300 (Colo. App. 2009); see also People v. Roadcap, 78 P.3d 1108, 1113 (Colo. App. 2003) (“A trial court should instruct the jury on a principle of law when there is some evidence to support the instruction.”). In determining whether the evidence is sufficient to warrant such an instruction, we view the evidence in the light that favors giving the instruction. People v. Silva, 987 P.2d 909, 914 (Colo. App. 1999). ¶ 34 Contrary to Clark’s contention, some evidence in the record indicated that Clark could be viewed as the initial aggressor. For instance, one witness to the altercation — T.W. — testified that she did not believe that Clark had the gun when he initially exited the 
 19 car. Instead, T.W. said, “I think [Clark] went back to the car and got [the gun].” This testimony at a minimum implies that Clark initiated the altercation by returning to his car to retrieve his weapon. The record also indicates that Clark was the only individual to actually engage in physical violence during the altercation by using the firearm against D.L. and G.M. ¶ 35 While Clark’s recitation of the facts provides a valid basis from which the jury could reasonably determine that he was not the initial aggressor, his argument misconstrues our role. In reviewing whether a trial court’s decision to provide a specific jury instruction was in error, we look only to determine if there is “some evidence” to support the initial aggressor instruction. Castillo v. People, 2018 CO 62, ¶ 37; see also Roberts-Bicking, ¶ 31 (“A trial court may instruct the jury on an exception to an asserted affirmative defense if ‘some evidence’ supports the exception.” (citing Galvan v. People, 2020 CO 82, ¶ 25)). To qualify as “some evidence,” the evidence must be such as would support a reasonable inference that the accused was the initial aggressor.” Roberts-Bicking, ¶ 31. As noted above, some evidence at trial supported a reasonable inference that Clark could have been the initial aggressor to the altercation. 
 20 ¶ 36 But Clark appears to contend that the record supports only the conclusion that he was not the initial aggressor. However, contrary to his argument on appeal, the issue of who initiated the altercation was highly disputed at trial. Testimony by the witnesses in the case provided varying — and often conflicting — accounts of how that altercation unfolded. For instance, Clark himself testified that T.W. told him that he was about to be assaulted by her companions. Clark also said that he heard someone attempting to open the back passenger side door of his car, and that he fired his gun in self-defense as he was exiting his car. In contrast, T.W. testified that Clark did not have a gun when he initially exited the car, and that he returned to the car to retrieve the gun before firing at D.L. and G.M. While we agree that the jury could reasonably have sided with Clark’s version of the facts, other testimony conflicted with his assertions. We, however, are not the fact finders in this case; that duty is reserved for the jury and the jury alone. See People v. Barker, 538 P.2d 109, 110 (Colo. 1975) (“It is axiomatic that the jury is the sole judge of the credibility of the witnesses.”); see also People v. Ramirez, 30 P.3d 807, 808-09 (Colo. App. 2001) (a limitation on a judge’s power “is premised on the 
 21 basic principle that the jury should decide the difficult questions of witness credibility and the weight to be given to conflicting evidence”). ¶ 37 Because the record provides some evidence for including the initial aggressor instruction, we discern the trial court did not err. III. Prosecutorial Misconduct ¶ 38 Next, Clark contends that the prosecutor committed reversible misconduct both in cross-examining Clark and during the prosecutor’s closing arguments. Specifically, Clark argues that the prosecutor engaged in misconduct by asserting that Clark had a duty to retreat instead of defending himself. We disagree. ¶ 39 “In reviewing a claim of prosecutorial misconduct, ‘we consider whether the prosecutor’s conduct was improper and whether any impropriety requires reversal.’” People v. Garcia, 2022 COA 144, ¶ 56 (citation omitted). Whether a prosecutor’s statements constitute misconduct is generally a matter left to the trial court’s discretion. Id. Accordingly, we will not disturb the court’s rulings on alleged misconduct absent a showing of an abuse of discretion. People v. Strock, 252 P.3d 1148, 1152 (Colo. App. 2010). 
 22 ¶ 40 Clark did not object to any of the prosecutor’s comments that he now challenges on appeal. When a claim of error for prosecutorial misconduct is not preserved, our review is quite limited — we may reverse only if plain error occurred. Hagos, ¶ 14. An error is plain only if it was obvious and so undermined the trial’s fundamental fairness as to cast serious doubt on the conviction’s reliability. People v. Dominguez-Castor, 2020 COA 1, ¶ 85. ¶ 41 Relevant here, Clark contends that several statements made by the prosecution during cross-examination and closing arguments constituted reversible prosecutorial misconduct. For instance, on cross-examination Clark claims that the prosecution repeatedly and improperly asserted that Clark should have retreated and not stopped to speak with T.W. prior to the altercation. In support, Clark points to several questions that the prosecutor asked him, such as why he did not (1) call the police for help; (2) drive to his friend’s house; (3) drive away from T.W.; (4) drive to the Aurora Police Department; or (5) retreat or hide inside his vehicle. ¶ 42 Clark also contends that the prosecution made similarly inappropriate statements in the prosecution’s closing arguments by 
 23 heavily emphasizing that he had a duty to retreat. For instance, he notes that in closing the prosecutor said the following: • “So why when [T.W.] stops first did [Clark] then stop half a block later? Instead, he could have taken any which number of ways out of the neighborhood away from her, away from her . . . . No, he chose to stop.” • “[Clark] mentioned he is in his parked car, on or off, and he heard someone trying to get into his back door, but it was locked. Would a reasonable person stick around, or would they drive off?” • “[Clark] mentioned shadow people, these people who were running all around the car and I didn’t know what else to do. What else could I do? Not get out of the car.” • “What is reasonable? Call 911, any X number of times. Go to the police station that he said he went to earlier. Have his friend call 911. . . . Not get out of the car. Keep driving. . . . Why not leave? If he is so afraid of [T.W.] why doesn’t he just leave?” • “If you want to let’s say assume that what the defendant said is true, is it reasonable? Is it reasonable to shoot 
 24 people walking towards your car? Is it reasonable to get out of your car, place yourself in the middle of what you describe as a dangerous situation? . . . No. This is law, this is order, and it’s about reasonableness. This is not self-defense.” ¶ 43 Reviewing Clark’s contentions of prosecutorial misconduct in light of the entire record, we are disinclined to conclude that the trial court committed plain error by not intervening sua sponte. As noted above, initial aggressors do not have a privilege of using physical force in self-defense unless the initial aggressor first withdraws from the encounter and notifies the other person of his or her withdrawal, and the other person continues or threatens to use unlawful physical force. People v. Toler, 9 P.3d 341, 350 (Colo. 2000). Such a duty to retreat only applies to initial aggressors. See People v. Martinez, 224 P.3d 1026, 1032 (Colo. App. 2009), aff’d on other grounds, 244 P.3d 135 (Colo. 2010). ¶ 44 Clark correctly notes that Colorado law imposes no duty to retreat on a person who is not the initial aggressor. See Cassels v. People, 92 P.3d 951, 956 (Colo. 2004) (noting only initial aggressors must retreat before using force in self-defense). And because Clark 
 25 asserts that he was the non-aggressor in this case, he argues that the doctrine of no retreat applies. Thus, he contends that any argument by the prosecution implying that he had a duty to retreat was reversible error. ¶ 45 Clark’s contention, however, is premised on his assumption that he was not the initial aggressor. But, as noted above, Clark’s actions as described through the testimony of T.W. support a slight but reasonable conclusion that he was, in fact, the initial aggressor. Specifically, some evidence indicated that Clark returned to the car to retrieve the gun before firing at D.L. and G.M. See Griffin, 224 P.3d at 300 (noting that Griffin’s initial verbal confrontation was insufficient to make her the initial aggressor; however, evidence that she left the argument and returned with a gun warranted giving the initial aggressor instruction); People v. Willner, 879 P.2d 19, 25 (Colo. 1994) (noting defendant was the initial aggressor because he was chasing the truck with a gun). ¶ 46 Because the act of returning to the car to retrieve the gun arguably supports a conclusion that Clark was the initial aggressor, Clark was not entitled to the protections of the no-retreat doctrine. 
 26 ¶ 47 We also reject Clark’s assertion that the prosecutor’s comments implied that he had a duty to retreat. The prosecutor’s statements — viewed in the context of the record as a whole — do not show that the prosecutor was arguing that Clark had a duty to retreat. Rather, the prosecutor’s comments focused on Clark’s decision to get out of his car and essentially enter the fray. See People v. Monroe, 2020 CO 67, ¶ 28 (noting the prosecutor’s comments did not highlight “the defendant’s failure to retreat once he felt threatened,” but rather emphasized the defendant’s “decision to enter the fray, which arguably made him an initial aggressor”). Thus, the prosecutor’s comments were a reasonable response to Clark’s assertion that he was not the initial aggressor. See People in Interest of J.R., 2021 COA 81, ¶ 46 (“A prosecutor is afforded considerable latitude in responding to the defense’s theory of the case.”); People v. Thornton, 251 P.3d 1147, 1149 (Colo. App. 2010) (“The prosecution is entitled to the benefit of every reasonable inference that may fairly be drawn from the evidence . . . .”). ¶ 48 Therefore, we discern no prosecutorial misconduct. 
 27 IV. Cumulative Error ¶ 49 Finally, we disagree with Clark that the alleged errors require reversal under the cumulative error doctrine. ¶ 50 “When reviewing for cumulative error, we ask whether ‘numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial.’” People v. Vialpando, 2022 CO 28, ¶ 33 (quoting Howard-
Walker v. People, 2019 CO 69, ¶ 24). To reverse under this doctrine, we must conclude that “the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.” Howard-
Walker, ¶ 24 (citation omitted). ¶ 51 Because we have rejected Clark’s assertions of error, we discern no cumulative error occurred during his trial. V. Conclusion ¶ 52 The judgment of conviction is affirmed. JUDGE JOHNSON and JUDGE HAWTHORNE concur.