21CA2104 Peo v Priest 08-01-2024 COLORADO COURT OF APPEALS Court of Appeals No. 21CA2104 Jefferson County District Court No. 20CR3274 Honorable Jason Carrithers, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Clinton Eugene Priest, Defendant-Appellant. JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS Division IV Opinion by JUDGE NAVARRO Pawar and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 1, 2024 Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Chelsea E. Mowrer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Clinton Eugene Priest, appeals the judgment of conviction imposed on jury verdicts finding him guilty of second degree murder and first degree assault. We reverse and remand for a new trial. I. Factual and Procedural History ¶ 2 On September 23, 2020, Priest and the decedent, Robert Miller, were drinking at a bar. They interacted to some extent and then both left when the bar closed. Both men went out the back of the bar to a parking lot. ¶ 3 When the bartender left a little while later, he found Miller lying on the ground with blood on him. Miller subsequently died from blood loss due to a stab wound to his bicep. ¶ 4 After leaving the bar, Priest went home, where his son called 911. Officers and paramedics arrived at Priest’s home, and he claimed he had been attacked and injured at the bar. Paramedics transported him to the hospital, where he was medically cleared, and officers took him to the police station, where they later arrested him. ¶ 5 The prosecution charged Priest with second degree murder, four counts of possession of a weapon by a previous offender 
2 (POWPO), and two crime of violence sentence enhancers.
1 At trial, Priest did not testify but asserted, through counsel, that he acted in self-defense. As noted, the jury found him guilty of second degree murder and first degree assault.
2 ¶ 6 On appeal, Priest raises multiple contentions in support of his request for reversal of the judgment. We agree with him that the trial court erred by instructing the jury on unsupported exceptions to self-defense. Accordingly, we reverse without the need to reach his other claims. II. Instructions on Self-defense Exceptions ¶ 7 Because insufficient evidence supported the instructions on the provocation and initial aggressor exceptions to self-defense, Priest is right that the trial court should not have given those instructions. 1 The prosecution later added one count of first degree assault, one count of second degree assault, and two additional crime of violence enhancers. The prosecution received permission to dismiss two POWPO counts. The prosecution planned to try the remaining POWPO counts in a bifurcated trial depending on the verdict on the murder charge. 2 Following the verdict, the prosecution successfully moved to dismiss the remaining counts. 
3 A. Standard of Review and Preservation ¶ 8 We review de novo whether sufficient evidence exists to support a requested instruction. Castillo v. People, 2018 CO 62, ¶ 32. Because Priest objected to the prosecution’s request for the instructions on the exceptions to self-defense, we review any error for harmless error. See id. at ¶ 56. Therefore, we must reverse if an error substantially influenced the verdict or affected the fairness of the trial. See id. at ¶ 57. B. Relevant Law ¶ 9 As pertinent here, Colorado’s self-defense statute provides that “a person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person.” § 18-1-704(1), C.R.S. 2023. But there are exceptions to this affirmative defense. Two were presented to the jury in this case: the initial aggressor and provocation exceptions. ¶ 10 Under the initial aggressor exception, a person is not justified in using physical force if [h]e or she is the initial aggressor; except that his or her use of physical force upon another person under the circumstances is justifiable if 
4 he or she withdraws from the encounter and effectively communicates to the other person his or her intent to do so, but the latter nevertheless continues or threatens the use of unlawful physical force. § 18-1-704(3)(b). An initial aggressor is someone who “initiated the physical conflict by using or threatening the imminent use of unlawful physical force.” Castillo, ¶ 41 (citation omitted). ¶ 11 Under the provocation exception, a person is not justified in using physical force if, “[w]ith intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person.” § 18-1-704(3)(a). Therefore, a defendant forfeits self-defense as an affirmative defense if (1) the other person uses unlawful physical force against the defendant; (2) the defendant provoked the use of such physical force by the other person; and (3) the defendant intended to goad the other person into attacking in order to provide a pretext to injure or kill that person. Galvan v. People, 2020 CO 82, ¶ 19. ¶ 12 When a court instructs the jury on the affirmative defense of self-defense, “it should instruct the jury on the provocation exception or any other exception to that defense if the exception is supported by some evidence.” Id. at ¶ 25. “To qualify as ‘some 
5 evidence,’ the evidence must be such as would support a reasonable inference that the accused was the initial aggressor or provoked the other person into attacking (or appearing to attack) him.” People v. Roberts-Bicking, 2021 COA 12, ¶ 31. C. Additional Facts ¶ 13 The prosecutor did not object to Priest’s request for an instruction on self-defense on the ground that the evidence did not support it. Instead, the prosecutor objected to a self-defense instruction that did not include the identified exceptions. When the prosecutor requested instructions on the initial aggressor and provocation exceptions, however, the prosecutor did not point to specific evidence supporting them. Defense counsel objected to instructions on those exceptions, arguing that the evidence did not support giving either exception. ¶ 14 The trial court agreed with the prosecutor that the evidence supported instructions on the self-defense exceptions, explaining as follows: I think the evidence presented thus far shows an interaction where Mr. Priest and Mr. Miller left the bar together. They walked down the driveway to the back parking lot. A person, reasonably concluded as Mr. Priest, got into a 
6 vehicle, started to drive, stopped, got out of the vehicle, some sort of altercation occurs. Someone gets back in the vehicle, again, still presumably Mr. Priest, and drives off. The court so instructed the jury. D. Application 1. The Trial Court Erred ¶ 15 As noted, the prosecution during trial did not point to specific evidence supporting the instructions on the exceptions to self-
defense. On appeal, the People point only to a surveillance video in support of those instructions. The unenhanced surveillance video shows a view from a parking lot next door to the bar. The parking lot is depicted in the upper right-hand corner of the video and is very dark. The altercation is barely visible. All that is clearly discernible on the video is a car being turned on, someone standing in front of the car, the car starting to move then stopping, some shadows during a fight, and the car driving off. Even the forensically enhanced videos show little more than that. ¶ 16 The People highlight that Priest relied on that video to “craft a narrative about the fight and argue he acted in self-defense.” Because that video shows little of how the altercation transpired, 
7 the People assert that it must necessarily support the inference that Priest was the initial aggressor or provocateur when he got out of the car. The People’s argument hinges on the notion that, because the video shows very little definitively, it is at least “as supportive of provocation and initial aggressor as self-defense”; therefore, the court needed to instruct the jury on all three concepts. ¶ 17 This argument, however, misconstrues the proper analysis. The question before us is not whether the jury should have been instructed on self-defense. As noted, the prosecutor did not argue below that the evidence was insufficient to support Priest’s self-
defense claim. And the People on appeal do not make this argument as an alternative ground to affirm the judgment. ¶ 18 Thus, even if the evidence supporting self-defense were weak, that is immaterial to this appeal.
3 The only question before us on this issue is whether some evidence supported instructing the jury on the exceptions to self-defense. So we must decide whether the video, and other admitted evidence, created a reasonable inference 3 We note that other evidence besides the video supported Priest’s self-defense claim because he told police officers that he had been attacked from behind and there was some physical evidence from the incident. 
8 that Priest either acted as the initial aggressor or provoked Miller into attacking him. ¶ 19 We see no evidence that supports such an inference. The video itself is quite dark and does not show who instigated the fight, what words might have been exchanged, what gestures might have been made, or anything that could suggest that either exception applies. And the enhanced videos show only some additional shadows and movement. Although one can see Priest’s car stop and his getting out of the car, that alone is insufficient to support the exceptions. See Castillo, ¶ 53 (concluding that a defendant popping the trunk and getting out of a car was insufficient on its own to justify instructing the jury on the initial aggressor exception). The video and its enhancements, without more, do not show provocation or that Priest was the initial aggressor. And no other evidence was presented at trial that could support giving the instructions. Even considering the evidence in the light most favorable to giving the challenged instructions, the evidence is insufficient. Cf. Roberts-Bicking, ¶¶ 36, 40 (concluding that evidence the defendant produced a pistol during an argument warranted an instruction on the initial aggressor exception and that 
9 the defendant’s statements in a police interview were sufficient to instruct the jury on the provocation exception). Consequently, the trial court erred by giving the jury instructions on the provocation and initial aggressor exceptions to self-defense. 2. Harmlessness ¶ 20 We must then decide whether the error was harmless. We note that the People do not argue that the error was harmless. And we conclude that it was not. ¶ 21 Our supreme court has decided that a superfluous instruction on a self-defense exception could prejudice a defendant because the jury “is likely to try to fit facts into an erroneously given instruction” even if the evidence does not support it. Castillo, ¶ 61. The supreme court has noted, however, that something more is necessary to transform a “possibility of prejudice” into “something that substantially influenced the verdict” or affected the fairness of the trial. Id. at ¶ 62. The something more could be the prosecution’s reliance on the erroneous instruction. See id. ¶ 22 Here, Priest’s only defense was self-defense, so it was integral to the trial. The erroneous exceptions instructions, therefore, had strong potential to undermine his defense. And the prosecution 
10 relied heavily on the initial aggressor exception during closing argument, explicitly referring multiple times to Priest as the initial aggressor and “the one who instigated this.” This reliance on the erroneous instruction substantially influenced the verdict. See id. at ¶ 66 (“Given the superfluous jury instruction and the statements by the prosecution, we conclude that the trial court’s erroneous decision to give the initial aggressor jury instruction substantially influenced the verdict or affected the fairness of the trial proceedings.”). ¶ 23 Although we acknowledge that the prosecutor did not rely on the provocation exception during closing, the prejudice created by the initial aggressor instruction is sufficient to require reversal. Accordingly, we reverse the judgment and remand for a new trial. III. Priest’s Other Contentions ¶ 24 We decline to address Priest’s remaining contentions because they involve facts specific to how the trial unfolded, they depend on the particular evidence and arguments presented (especially as to any possible prejudice to Priest), and some were not preserved for our review. Because they “may not occur on retrial under the same circumstances, if at all, we do not address them.” Bullington v. 
11 Barela, 2024 COA 56, ¶ 30. Addressing them now would result in an advisory opinion based on supposition about how the new trial will unfold, which risks improperly depriving the parties of their prerogative to litigate the case as they choose. See People v. Becker, 2014 COA 36, ¶ 29; see also People v. Lybarger, 700 P.2d 910, 915 (Colo. 1985) (“Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such decision is clear and inescapable.”). ¶ 25 Our decision not to address those issues, however, should not be construed as reflecting any opinion on the merits of the issues. See Becker, ¶ 30. IV. Conclusion ¶ 26 The judgment is reversed, and the case is remanded with directions. JUDGE PAWAR and JUDGE JOHNSON concur.